NELSON L. MOREY, *et al.*, Defendants in Error, *vs.* MARY E. STALEY, *et al.*, Plaintiffs in Error.

1. *Lands and land titles—Evidence—Declarations asserting title.*—In a suit for the title to land, the declarations made by a party in possession, asserting his title are not competent testimony.

2. *Practice, civil—Witnesses, examination of—Time of, in equity proceedings.*— In equity proceedings the chancellor may in his discretion examine witnesses before the case is taken up.

3. *Equity—Evidence—Supreme Court.*—In equity suits, the Supreme Court is not bound by the finding, upon the evidence, in the lower tribunal.

4. *Equity—Conveyance—Title—Actual and constructive notice.*—Where the title to a tract of land was in the son, who made a power of attorney, authorizing his father to convey and the father does convey; but afterwards, on non-payment of the purchase money, he takes back the title to himself, and has such deed recorded, in a suit in equity to establish the son's title, the question in regard to an acquiescence of the son in such a condition of the title, is one of actual knowledge and not of such constructive notice as our statutes give to recording a deed.

## Error to Perry Circuit Court.

*Johnson & Nell*, for Plaintiffs in Error.

I. The declarations of a party in connection with acts of ownership are admissible. (1 Phil. Ev., 217.)

*Robinson & Clardy*, for Defendants in Error.

I. The declarations of a party in possession are only admissible to explain such possession, and only then when they are against the interest of the possessor. (1 Phil. Ev. [3d Ed.], 193, 194, and foot-note 1 and authorities there cited; Peaceable vs. Watson, 4 Taunt., 16; West Cambridge vs. Lexington, 2 Pick., 536; Little vs. Libbey, 2 Greenl., 242; Doe vs. Pettitt, 5 B. & Ald., 223; Criddle vs. Criddle, 21 Mo., 522; Turner vs. Belden, 9 Mo., 797; Cavin vs. Smith, 24 Mo., 221; Watson vs. Bissell, 27 Mo., 220; Burgess vs. Quimby, 21 Mo., 508; Wood vs. Hicks, 36 Mo., 326; Salmon's Adm'r vs. Davis, 29 Mo., 181; Curry vs. Lackey, 35 Mo., 389; Tucker vs. Frederick, 28 Mo., 574; Howell vs. Howell, 37 Mo., 124; Carne vs. Nicoll, 1 Bing. [N. C.] 430; Smith vs. Martin, 17 Conn., 399; Doe vs. Williams, Cowp.,

621 ; Gibbeney vs. Marday, 34 N.Y., 301 ; Keator vs. Dimmick, 46 Barb., 158 ; Barker vs. Ray, 2 Russ., 63 ; Davies vs. Pierec, 2 T. 53 ; Doe vs. Jones, 1 Camp., 367 ; 3 Am. Law Reg. [N. S.], 650.)

NAPTON, Judge, delivered the opinion of the court.

This is a proceeding to obtain a decree of title to a tract of land, lying on the Mississippi river in Perry county. The parties to the suit, plaintiffs and defendants, are the heirs of one Anson Morey, deceased.

The legal title to this land was beyond controversy in the plaintiffs, or rather two of them, who were sons of Anson. Morey, from 1854 up to 1863. In that year the father, who had been before that acting as attorney in fact for his two sons, who lived in California, mortgaged the land as attorney in fact to secure some money he borrowed, and upon paying off the mortgage took a deed to himself—and in this way, upon his death in 1870, the legal title remained in him—and the land would of course go not only to the plaintiffs, but to the defendants who are also his heirs, unless the court would decree the legal title to the plaintiff.

And whether the two sons, plaintiffs were the real owners of this land, in equity as well as law, or the father, is the question of fact which was tried by the Circuit Court, on depositions and oral evidence, and found by that court, in favor of plaintiffs.

The Circuit Court found all the allegations of the petition to be true, and so far as the deeds, powers of attorney or other papers of record are concerned, no objection is made.

It seems that in 1854 the plaintiffs, Nelson S. and Anson H. Morey, bought this land for $545, and a deed was made to them, that they executed a power of attorney to their father, authorizing him to sell it ; that he did sell it in 1857, and to secure the purchase money took a deed of trust to his sons ; and that it was sold under that deed and bought in by him, and the conveyance made by the trustee was to his sons, the plaintiffs ; that in 1858, the sons, the plaintiffs, executed

another power of attorney to their father, under which in 1859 he conveyed to one Jones, to secure the payment of $800 he borrowed on his own account; that he paid this $800 in 1863 and at his request Jones made a deed to him and not to his sons, which deed was duly recorded. And this left the legal title in the father at the time of his death in 1870.

The theory of the defense is, that this land was originally bought with the father's money, that the title was put in his two sons then in California to enable him to keep off his creditors; that this device was adhered to so long as the father was in a state of pecuniary embarrassment, but when he became prosperous and the necessity ceased of protecting his lands by holding them in the name of his sons, he took the title in himself, and that the court should allow it there to remain.

Upon the trial the defendants offered to prove that the father, whilst in possession of the land, said it was his, and these declarations the judge excluded and this exclusion is made a point. Declarations by a party in possession explanatory of that possession and disclaiming title are always admissible because they are admissions against the party making them; but that a party can build up a title by his own declarations is not so clear. The declarations of the father in this case, disclaiming any title, were properly admitted—his declarations asserting title and ownership were excluded—and we think rightly. (Turner vs. Belden, 9 Mo., 797.)

The only other point of law made, during the trial, was, that the court allowed two witnesses who lived in Illinois, and who wished to get home to be examined before the court took up the case. The proceeding was before the court as a court of equity, and the time of examining witnesses was a matter in the discretion of the judge.

This court is not bound by a decree or judgment in a case of this kind, to regard the opinion of the court below on the facts as conclusive here, as it would be in jury trials or trials by the court, where juries are dispensed with. This court may

examine and decide the case without regard to the opinion of the Circuit judge.

The question here is, as it was below, whether the evidence authorized a decree. This evidence has therefore been carefully examined. There is a considerable conflict of evidence as to how the father, in the latter part of his life understood and represented his interest. There is no evidence whatever to show that the plaintiffs did not pay for this land originally.

The act of the father in taking a deed to himself, seems to have been without any authority whatever. Indeed it is so conceded.

The theory of the defense is, that this land originally belonged to the father, having been purchased by his money, and then the title was put in the sons to defraud the father's creditors. But there is no proof of this. For many years the father professed to act as agent of his sons and made all contracts in their name, and it was not until 1863—about nine years after the purchase by the sons—that he took a deed to himself, apparently without any authority from either of his sons, in whose name the title before that stood, and in whose name he had as attorney in fact executed and received all previous conveyances. If it had appeared that the sons—the plaintiffs—had actual knowledge of such a deed, then acquiescence for a number of years might well have been regarded as an admission of the title of the father. But there is no evidence on the subject. One of them lived in California till his father's death, and another returned here some years before and lived with his father and assisted him in the management of the farm. Whether either was aware of this deed to the father is a mere matter of conjecture. That it was duly recorded amounts to nothing in considering the questions arising here. Actual knowledge of such a deed having been made would naturally have led to efforts on the part of the plaintiffs to have the matter corrected, and if no such efforts had been made during the seven years it stood on the records, with their knowledge, it would strongly tend to a confirmation of the defendant's theory, that plaintiffs were never the real owners of the land.

But the plaintiffs were not allowed to testify in this case. There was no evidence tending to show that the plaintiffs or either of them had any knowledge of the deed to their father in 1863.

They knew, of course, from their own deeds and powers of attorney, executed by them on two occasions, that the title to this land was still in them, unless sold under such power of attorney by the father. They could not know that in disregard of his power, their father had in 1863 taken a deed to himself, unless the fact was communicated to them. Recording the deed in Perry county would certainly not impart information to a man in California. That is a mere fiction of law, established for wise purposes, that all the world must take notice of what is duly recorded; but it has no application to the question of fact examinable in this case.

Upon all, the title papers or deeds produced in this case, it is quite clear that the Circuit Court could not have decreed otherwise than as it did. All the documents showed the title in plaintiffs, except the deed of 1863, which was taken in the name of the father and so far as it appears, without any authority, and in fact, so far as the previous deeds show, directly against the powers he professed to act under.

The parol evidence, after excluding the plaintiffs from testifying and all declarations of the father in support of his title, left the case very much as the deeds made it.

Therefore, after a careful consideration of the testimony, we have been unable to arrive at any other conclusion than the one reached by the Circuit judge. Judgment affirmed.