Mylar v. Hughes.

Joseph Mylar, Appellant, *vs.* John Hughes, Respondent.

1. *Entry upon fraction of quarter section—Conveyance of larger sub-division by disseizor with deed back to himself—Color of title.*—The mere fact of an entry upon and occupation of a fractional sub-division of a section of land, set apart under the United States surveys in Missouri, will not give color of title to a larger sub-division thereof, within the meaning of § 5 of the statute of limitations (Wagn. Stat., 917), unless he has acquired title by paper conveyance or inheritance, or contract from another who has previously assumed to be owner. And the disseizor cannot, by a conveyance to a third person, of the larger tract, and taking a deed back to himself, obtain color of title thereto.
Where one is said "to have color of title," the phrase implies that some act has been done, or some event has occurred by which some title, good or bad, has been conveyed to him.
2. *Statute of limitations—Failure to take possession of land for twenty years—Ouster necessary to divest title.*—One who has the title to land but fails to take actual possession of it for twenty years, is not for that reason barred by the statute of limitations. The title carries with it the seizin, and to divest it after any lapse of time, great or small, there must be an actual ouster or a constructive disseizin, by adverse possession of some part of the tract under color of title.
3. *Land—Occupancy of without claim or color of title a trespass.*—The taking possession of land without any color of title or assertion of claim thereto, is a mere trespass.
4. *Lands—Burning of records—Handbills as evidence.*—Where all the records pertaining to the sale of land were destroyed by the burning of the county court house, hand-bills advertising the date of sale and description of the property, may be used as evidence in suit for the land.
5. *Land—Patent—Decree as to—Good collaterally as against mere possession.*—A decree divesting the title to land out of an original patentee, and vesting it in another, cannot be attacked collaterally on account of mere irregularities in the proceedings, by one not a party in interest, and having no claim to the property other than naked possession.

*Appeal from Caldwell Circuit Court.*

*Crosby Johnson,* for Appellant.

I. The court erred in admitting the declarations of David Hughes when he claimed title to the land in dispute. Defendant and his ancestor never had actual possession of this land. Their possession, if any they had, was constructive. To constitute constructive possession, the claim must be under color of title. (DeGraw vs. Taylor, 37 Mo., 310; St. Louis vs. Gorman, 29 Mo., 593.) To constitute color of title

there must be an instrument, having a grantor and grantee, and containing a' description of the lands intended to be conveyed, and apt words for their conveyance. (3 Washb. Real Pr., 138, § 36 a.) No mere words of claim will supply the place of color of title.

"Constructive title is never based upon a claim merely. There must be a deed purporting to convey the whole, or some proceeding or instrument, giving color and defining boundaries, as well as actual possession of a part." (Long vs. Higginbotham, 56 Mo., 245 ; Fugate vs. Pierce, 49 Mo., 441, 447–8.) In a suit for the title to land, the declarations made by a party in possession, asserting his title, are not competent testimony. (Morey vs. Staley, 54 Mo., 419 ; McLean vs. Rutherford, 8 Mo., 109 ; Criddle vs. Criddle, 21 Mo., 522 ; Turner vs. Belden, 9 Mo., 797.)

II. Even if David Hughes gave a deed of trust to Grubb, David did not and could not hold or claim under that deed. It would be no color of title for him. Nor could his possession enure to James M. Hughes.

III. Defendant, being a stranger, cannot assail the decree, either directly or collaterally for irregularities, or for anything which did not go to show want of jurisdiction on the part of the court. That final judgment was rendered at the return term, is an irregularity for which the case on error or appeal might have been reversed, but cannot be attacked collaterally. (Brackett vs. Brackett, 53 Mo., 265 ; Carsin vs. Sheldon, 51 Mo., 436.) ·

*J. M. Hoskinson, with Franklin Porter,* for Respondent.

I. A written conveyance is not necessary to give color of title. "Whatever title would authorize a party in possession of a part of a tract to maintain an action against a, wrongdoer, for a trespass on the remainder of the land, would be a sufficient color of title under the statute of limitations as against the real owner. It is not necessary that this color of title should be created by deed or other instrument of writing. It may be created by an act *in pais* without writing,"

per Adams, J., in Rannels vs. Rannels (52 Mo., 112—disapproving and overruling City of St. Louis vs. Gorman, 29 Mo., 592, Fugate vs. Pierce, 49 Mo., 441 and Crispin vs. Hannavan, 50 Mo., 536, so far as they enunciated a contrary doctrine; see, also, McCall vs. Neely, 3 Watts, 72; Bell vs. Longworth, 6 Ind., 277.)

II. But either the deed from Grubb to J. M. Hughes, made in 1856, or that from J. M. Hughes to David Hughes, made soon after, and burned in April, 1864, both conveying all of the north half of section 15, gave ample color of title to all of said half section including the land in suit to respondent's grantors, more than ten years before this action was brought. Any instrument having a grantor and a grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described. (3 Wash. Real Pr., 137; Brooks vs. Brayn, 35 Ill., 394.)

III. Plaintiff failed to show that he ever had title to the land in suit. The transcript wholly fails to show that the land in controversy was ever patented to Squire Bozarth.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment to recover the west half of the north-west quarter of section 15, township 56, range 29.

The plaintiff produced in evidence a patent from the United States for the land in controversy, to one Squire Bozarth, the date of which is not stated, and a proceeding in equity in 1870, to divest the title from Squire Bozarth to his brother, John Bozarth; and then produced a deed from John Bozarth to himself.

The patent is not copied in the record by agreement of counsel, but from subsequent testimony we may infer that it was dated as far back as 1838 or 1839, and perhaps earlier.

The only defense relied on was the statute of limitations, and the testimony on this point is exceedingly vague and confused; and it is difficult to state the precise state of facts on which the instructions and subsequent verdict and judgment of the court were based.

The main facts, however, which may be assumed as uncontradicted and beyond dispute, seem to be about as follows:

·David Hughes, the father of the defendant, was in possession of a farm, lying partly in the north half of section fifteen, in 1839 or 1840. His house, which some of the witnesses call the "old Jo. Smith house," was in or near the town of Far-West, and his farm, actually enclosed and cultivated, contained about 100 acres of land, lying mostly in the northeast quarter of section 15, and partly in a section north of 15. The origin of the claim or title to this farm nowhere appears in any portion of the evidence given at the trial on either side.

It does appear, however, beyond dispute, that in 1855, David Hughes conveyed the north half of section 15 (which embraces the land in controversy) together with some 60 acres in section 10, to John P. Grubb, of St. Joseph, to secure a loan of about $1,300 made by one Roberts of the same city.

There having been a failure of payment on the part of Hughes, Grubb, the trustee, sold the land under the deed, on the 28th June, 1856; and James M. Hughes, of St. Louis, became the purchaser, through an agent of his, sent to Kingston for the purpose. The sum bid was about $1,500. After this J. M. Hughes made a deed for this same land to David Hughes, said Hughes agreeing to give his note or notes for the amount of the purchase, with interest, and to secure the same by a deed ·of trust.

The witness who testifies to these facts then proceeds: "said deed of trust and notes were sent to me with the deed to David Hughes by James M. Hughes. The deed of trust and note or notes above referred to were burned at the time of the burning of the court house in Kingston, in April, 1860. They were in my possession when burned. After this, and after the death of David Hughes and James M. Hughes, the land was sold under a deed of trust, executed and made by said David Hughes at Kingston, and bought in, as I now remember, by Calvin F. Burns, &c." This is all the testimony in reference to the deed of J. M. Hughes to David Hughes.

The history of the subsequent deed is clear enough. On the 19th of July, 1866, David Hughes conveyed to Hardwick, as trustee, to secure a note for $1,800, given to C. F. Burns, dated in 1860, and payable nine years after date. The half section conveyed in this deed, which includes the land in controversy was subsequently conveyed by Hardwick, in 1869, to Calvin F. Burns; and on the 22nd of December, 1870, Calvin F. Burns conveyed this same land to John Hughes, the defendant, a son of David Hughes.

In regard to acts of ownership or verbal declarations of ownership of the land in controversy, the testimony of Th. C. Hughes, a son of David Hughes, was, that his father moved to the county in 1839; that he cultivated a field of 100 acres in the north half of section 15, but not including the 80 acres now in dispute, nor any part of it; that he claimed the north half of the section by a deed from J. M. Hughes; that from 1841 to 1844, he had a race track on the north-west quarter, which passed over an acre or two of the 80 acre tract sued for; and upon one occasion he authorized a neighbor to cut firewood on this western 80, of the north half of the section.

It was proved that David Hughes never gave in this land to the assessor, and that it was taxed as belonging to one Sam. Stewart. It also appeared that Bozarth had paid the taxes on the 80 acre tract in question, in 1844 and 1845, but neglected to pay any thereafter, thinking it had been sold for non-payment of taxes.

Omitting for the present any notice of the minor questions presented by various exceptions taken at the trial, it is obvious that the merits of this case depend upon the construction which is to be given to the phrase "color of title," so frequently found in adjudications and text books, in connexion with the facts in evidence.

That the original entry of Hughes was without color of title, we are left to presume, as none was shown; that an entry upon 80 acres of land and an actual possession of the same will not give "color of title" to 160 acres, without some paper conveyance to the disseizor, or some claim based on the pecu-

liar facts of the case, is manifest, and it is equally plain that the disseizor cannot make his title any better by giving a deed to some third person and taking back a conveyance to himself.

C. J. Gibson, in McCall vs. Neely (3 Watts, 72), discusses this subject carefully, and his conclusion is expressed thus: "To give color of title, would seem not to require the aid of a written conveyance, or a recovery by process and judgment, for the latter would require it to be the better title. I would say that an entry is by color of title when it is made under a *bona fide* and not pretended claim to a title, existing in another. It is impossible, therefore, to say that a disseizor, claiming to be the true owner of a survey, as he may in fact be, without being named in the warrant, does not enter by color of title."

These observations of this eminent judge are plain enough to convey his meaning, as applied to the system of land surveys and warrants in Pennsylvania; but under the system of surveys adopted by the federal government for the sale of their land in the Missouri Valley Territory and Louisiana, some modification of the principle, or of its application, seems necessary.

In Pennsylvania, as in Virginia, lands were granted upon surveys of no specified extent, and conforming to no fixed system. Each warrant contained a specified number of acres and specified boundaries, perhaps to be determined by water courses, mountains or other natural objects, or contiguous surveys. The surveys might contain 500 or 1000 or 5000 acres, or any intermediate quantity, depending upon prior settlements, or grants or upon the present bounty of the government issuing the warrant. Each warrant and survey was, however, distinct and isolated, and had no connexion with any general system.

But in this country all the public lands are surveyed into townships, sections and sub-divisions of sections, each survey containing not only a definite number of acres, but precisely the same number (barring slight inaccuracies) contained in a survey of a corresponding township, or section or sub-division of a section. It cannot be said, therefore, that one who en-

ters on and cultivates a portion of a 40 acre tract, which is the smallest sub-division known to our system of surveys, pretends thereby to have any claim under color of title to the whole section, unless he has some paper title from some other person, or by inheritance or contract has acquired the right from another who has previously assumed to be the owner.

Nor can he get a color of title to the section by simply making a deed to another person for the entire section, and then taking a deed back to himself. Such a transaction, without any consideration, would be regarded as a mere fraud.

But can the deed to a third person, in the case supposed, when made in good faith, and upon ample consideration, have the effect to give the grantor color of title? We think not. It is no better, so far as the grantor is concerned, than a verbal declaration from him would be, that he owned the section of land he conveys; and mere verbal declarations cannot elevate him above a trespasser to an owner. (Morey vs. Staley, 54 Mo., 419—and cases there cited.) It is undoubtedly an act indicating a claim of title; but it cannot elevate the claim to one "under color of title;" and the latter, it is needless to say, is necessary, in order to protect the claim beyond the limits of actual possession under the statute of limitations.

The fifth section of our act concerning limitations, declares that "the possession, under 'color of title,' of a part of a tract, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of said tract."

This provision seems to be a mere codification of well settled principles; but the question as to what constitutes color of title, is left where it was before.

An examination of the opinion of this court, in City of St. Louis vs. Gorman, (29 Mo., 602) will show that it was not for a moment supposed that a disseizor could claim his possession as under color of title, beyond its actual limits, merely by making a deed to a third person. As Judge Scott observed in that case, "the evidence relied on would just as well show that

he had a color of title to all the land unoccupied within the commons;" so it may be said here, that Hughes might as well have claimed the whole section, and under such deed have asserted a color of title. And the court say in that case—"when we say a person has color of title, whatever may be the meaning of the phrase, we express the idea, at least, that some act has been done, or some event transpired, by which some title, good or bad, to a parcel of land, has been conveyed to him." Not that he has conveyed it to some one else.

Applying these principles to the facts of the present case, as far as the record discloses them, it is apparent that the claim of David Hughes to the north half of section 15, under color of title, originated with the deed from James M. Hughes.

And here is presented an obscurity in regard to this deed which prevents any final disposition of this case; and which might have been removed by the witness and the only witness who testified concerning this deed. It is true that another witness, the son of David Hughes, speaks of his father claiming the half section, under a deed from J. M. Hughes, as early as 1843 or 1844; but the statement is so indefinite, as to date, as to leave the inference that he was merely referring to the deed made by said J. M. Hughes, after his purchase under the sale of Grubb.

The testimony of C. F. Hughes, in relation to this deed, is exceedingly vague. It does not appear that this deed was ever delivered. It does not appear whether it was sent to him as an escrow, to be delivered to David Hughes, upon his executing the notes and deed of trust spoken of, or whether it was sent to him as the agent of David Hughes, or whether it was recorded.

It appears that the notes and deed of trust were burned in the witness' office in the court house in 1860, when the court house and all its contents were destroyed by fire. It is not stated whether this deed was burned at the same time. It might be inferred, from the subsequent deed made by David Hughes to Hardwick, in 1866, that the deed had been delivered to David Hughes, either in person or to his agent; though

this inference is merely conjectural, as the date of the death of J. M. Hughes is not stated. It only appears that he and David Hughes were both dead at the time of the trial in 1872 or 1873. As this was a question of fact for the jury, or in this case, for the court acting as a jury, it would not be our duty to interfere, but that it is difficult to conjecture, from the various instructions given by the court, which view was entertained by the court on this point of the case.

Unless the instructions have been mis-recited in the record, they appear to be obviously contradictory.

The first instruction given for the plaintiff was correct, and is as follows: "Proof of David Hughes claiming the land in controversy, is no evidence of his possession, unless he claimed said land by color of title, as a part of the tract of land upon which he resided." The second instruction which was refused was, "Color of title cannot be established by a chain of conveyances commencing with a conveyance made by David Hughes; but must commence by a conveyance made to David Hughes." The first clause of this instruction is rather broad and indefinite and liable to misconception, but the last clause is correct and explains the meaning of the first clause, and it might well have been given.

The 3rd instruction asked by plaintiff was given, and is thus: "The fact that said David Hughes made conveyances of said land is no evidence that he had the title or color of title to the same; and his purchase of said land from James M. Hughes, as purchased under the deed of trust made by David Hughes, vested the said David Hughes with no other or greater title than he had at the time he executed the deed of trust."

It is difficult to understand what is meant by this instruction, unless we refer to the next instruction, which is in these words: " The conveyances offered in evidence, by defendant, show a color of title in him only since the date of his deed from Calvin F. Burns, and a color of title in said Burns, only from the date of his purchase of said land from Sam. Hardwick, trustee."

If these two instructions are to be understood as their terms would seem to imply, it is difficult to see how the court could find for the defendant, seeing that the deed of Burns was not made till 1869, only three years before suit brought.

Various instructions asked by plaintiff were refused; but it is unnecessary to copy them. I will merely quote some of the more prominent ones given for the defendant.

1. "If the court, sitting as a jury, finds from the evidence, that defendant and his grantors have been in actual, open and continuous possession of part of the old Hughes farm, having deed to the whole north half of said section 15, township 56, range 29—and claiming to own the same, for the period of ten whole years next before the commencement of this suit, then the court will find for the defendant."

2. "If the court finds from the evidence that in the year 1856 or 1857, David Hughes was in possession of what is known as the old Hughes farm, situate on the north half of section 15, etc., holding the same under a deed from J. M. Hughes to said north half of section 15, claiming to own the whole of said north half, and that said David Hughes, while he was so claiming to own the same and in possession thereof, deeded the same to Sam. Hardwick to secure certain notes, given to Calvin F. Burns; that said trustee and Hardwick proceeded to sell said lands at public auction, and said Calvin Burns became the purchaser, and that afterwards, said Calvin F. Burns conveyed said land to defendant, John Hughes, and said defendant, John Hughes, has been in possession of part of the tract, claiming the whole under a deed, and remained in such possession until the bringing of this suit, the court will find for defendant."

3. "If the court finds that John Bozarth, plaintiff's grantor, for 20 years from and after the year 1849, claimed no title in, and was not at any time during said period in the possession of, the premises in question, the judgment must be for defendant."

Two additional instructions were given for defendant, but they assert the same rules of law stated in those copied.

The first two instructions are ambiguous and evasive of the point raised by the evidence, unless they were designed to assert that where a party who is in possession of a part of a tract of land, without any color of title, for several years, afterwards gets a color of title within the period fixed by the statute of limitations, the law will cause this color of title to relate back and attach to his original possession and thus antedate the running of the statute to the period of his first entry.

The first instruction seems to assert that a party who has a title to land, but who omits to take actual possession of it for 20 years, is barred by the statute of limitations, although no actual adverse possession by any one else has occurred.

The title carries with it the *seizin;* and there must be an actual ouster to divest it, at any length of time, or a constructive *disseizin* by an adverse possession of part of the tract under color of title.

As the case must be remanded on account of these erroneous instructions, it is proper to advert briefly to one or two minor points made on the trial.

It is contended, in this case, that the establishment of a race track over a corner of the land in dispute, in 1842, and allowing a neighbor to cut a few loads of wood on the tract, were such acts of ownership as would constitute an adverse possession. But it is not pretended that Hughes' claim, if he had any, was at the date of these acts, under any color of title whatever. This was long anterior to any deed made even by himself; and the acts could be regarded in no other light than mere trespasses, and not such acts as would apprise the true owner of any hostile claim.

We see no objection to the admission of the copies of the deeds from Hughes to Hardwick and from Hardwick to Burns; nor to the introduction of the printed hand-bill or advertisement of the property by Grubb. Under the circumstances, the handbill was an important link in the evidence, and especially calculated to throw light upon the date of the sale—and the exact description of the land—matters which in the destruction of all the original documents and deeds and

records, by the burning of the court house, could only have been established by secondary evidence.

The decree by which the title to the land in controversy was conveyed to plaintiff's grantor, could not be attacked collaterally for such irregularities as have been pointed out. It was good against all the world, except such as had an interest and a right to have it set aside; and the defendant had no interest in it whatever. Whether the title remained in the original patentees, or in the parties to whom this decree transferred it, could not concern the defendant, who claims only by a possession adverse to the patentee.

The judgment is reversed and the case remanded; the other judges concur.