# KANSAS CITY & ATLANTIC RAILWAY COMPANY v. SMITH et al., Respondents; and VIEW et al., Appellants.

### Division Two, June 12, 1900.

1. **Deed of Squatter:** NOTICE. The deed of a mere squatter imparts no notice to subsequent purchasers even though recorded.

2. ———: REVENUE LAWS: RECORD OWNER. A mere squatter and his grantees, though their deeds are of record, are not record owners within the meaning of the revenue laws which require suits for delinquent taxes to be brought against the record owners, if such squatter and his grantees were not in possession at the time the suit for taxes was brought.

3. **Deed:** WRONG INITIALS: REJECTION BY COURT AT LAW. A deed recited that in consideration of money paid by "T. A. Thompson," the grantor bargains, etc., to "the said J. T. Thompson," certain land, to have and to hold unto "the said T. A. Thompson," his heirs and assigns forever, and covenanted with "the said T. A. Thompson" for the usual warranties. *Held,* that in an action at law the court could reject the initials in the granting clause as being repugnant to the remainder of the deed, and there would remain a perfect conveyance unto "the said Thompson." And in such case the tax collector properly brought suit against T. A. Thompson instead of J. T. Thompson.

4. **Judgment for Taxes:** CONCLUSIVE OF CERTAIN QUESTIONS. A judgment for taxes, if brought against the right parties, is conclusive of all questions as to the amount of taxes due, the regularity of the assessment, the certificate of the collector, and is not open to attack in a collateral proceeding.

5. **Title by Hearsay.** Statements alleged to have been made by persons to the effect that at the time they were in possession of land they were there under one of the parties to the suit or one from whom such party claims to have derived title, should be excluded as hearsay, as an attempt to prove title by adverse possession by means of declarations in the interest of the declarant.

6. **Condemnation Proceeding:** COMPULSORY INTERPLEA: BURDEN. In a suit for the condemnation of land for a railroad right of way, brought against all the claimants to a tract of land, to which those in actual and exclusive possession file answer setting up their purchase, and asking that their co-defendants be required to set up their claim, if any they assert, to the money assessed as damages to the owners of the strip condemned, it is proper for the court to require such other claimant to interplead for the fund, and to assume the burden of establishing their ownership to the land.

7. ———: ———: PEREMPTORY INSTRUCTION. In such case if the claimants out of possession have nothing but a deed from a squatter and make no showing of either adverse or continuous possession for the statutory period, the court should give a peremptory instruction to the jury that their verdict should be for the other claimants.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*W. Rea Heath* and *S. P. Forsee* for appellants.

(1) It is not the province of the court to sustain an instruction for the defendant after a demurrer has been overruled and the defendant has offered the evidence. Gannon v. Gas Co., 145 Mo. 503; Linn v. Massillon Bridge Co., 78 Mo. App. 111. (2) There is priority of grant and descent in the possession of Peter View, Darton and View heirs. Chouquette v. Barada, 23 Mo. 337; 28 Mo. 499; Menkens v. Blumenthal, 27 Mo. 203; Shaw v. Nichelay, 30 Mo. 99; Clayton v. Cagle, 97 N. C. 300; 1 S. E. 523. (3) The possession of the tenant is possession of the landlord, and his statements as to how he holds is proper evidence and a part of the *res gestae.* Darnell v. Donnelly, 38 Mo. 538; Harper v. Morse, 114 Mo. 325; Crispen v. Hannavan, 50 Mo. 549; Scarfe v. W. N. Car & Land Co., 90 F. 238; Deil v. Stegner, 56 Mo. App. 538; Horner v. Renter, 152 Ill. 106 (36 N. E.

747); Greenleaf on Evidence (14 Ed.), 109, pp. 147, 148.
(4)  The question of adverse possession is one for the jury to
decide under the evidence.   Wilson v. Taylor, 119 Mo. 632;
Turner v. Hall, 60 Mo. 271; Leeper v. Baker, 68 Mo. 400;
Draper v. Short, 25 Mo. 203; Sullivan v. Eddy, 154 Ill. 199
(40 N. E. 482).   (5)  The title of the Views can not be
changed by the tax deed.   Hartman v. Hornsby, 142 Mo.
369; Troyer v. Word, 96 Mo. 478; Allen v. DeGroodt, 98
Mo. 162.   (6)  The possession of Darton and tenants is to
the benefit of the Views and for the entire tract.   Pharis v.
Bayliss, 122 Mo. 123; Allen v. Wansfield, 108 Mo. 373;
Coffee's Adm'rx v. Crouch, 28 Mo. 108.   (7)  The remain-
dermen are entitled to the money, as it is part of their inher-
itance, and should have been made parties.   Phillips v. Over-
field, 100 Mo. 474.   (8)  There can be no contention but
what Peter View had a sufficient possession under claim or
color of title to pass some title; that the possession of Peter
view and Nancy View are the same and adverse to the record
title; that the transfer of the interest of the life estate is
privity to and a continuance of the possession for the benefit
of the remaindermen, and no action on the part of Smith
and Russell could change their rights.   Hickinger v. Link,
92 Mo. 491; Bradley v. Railroad, 91 Mo. 498; Shumate v.
Snider, 140 Mo. 87; Rothwell v. Jamison, 147 Mo. 616; Am.
& E. Enc. of Law, Vol. 1, p. 844, foot note Possession of
Receiver.   (9)  The jury should have found in its judgment
the value of the possession of Smith and Russell, the value of
the life estate, and also of the remaindermen.   Calcough v.
Railroad, 2 Head. (Tenn.) 171; Ross v. Adams, 28 N. Y. (4
Dutch) 160; Diddle v. Harrison, 23 Mo. 597; Lewis on Em.
Dom., sec. 321.   (10)  Felix G. View, having conveyed the
legal title of the trust estate to Darton, placed it in such a
position that he could not defend it from trespassers, and no

limitation or possession could bar the rights of the life estate or remaindermen.    Woods on Limitations, sec. 208.

*Sandusky & Sandusky* for respondents.

(1)    The deed from Peter View to Felix View, trustee, lying outside the chain of title, its record did not impart notice to subsequent purchasers.  Tydings et al. v. Pitcher et al., 82 Mo. 379.    (2)    The tax deed from Timberlake, sheriff, to Henry Smith, dated March 8, 1881, was based upon a judgment against the original patentee, and all grantees under him down to the date of the institution of the tax proceeding.    The suit was therefore against the real, as well as the apparent, owner of record, and the sheriff's deed conveyed a perfect title to the land.    Hilton v. Smith, 134 Mo. 507.    This being true all other questions discussed in this case become immaterial, and the court correctly instructed the jury to find for respondents.    (3)    As respondents were in actual and exclusive possession of the land at the date of the condemnation proceeding, the order directing appellants to set up their claims, if they had any, to the damages assessed, was the legal and proper procedure.    If appellants had any claim to the land they would have been compelled, in the absence of any condemnation proceeding, to have asserted their claim by suit in ejectment, and to have affirmatively sustained it against the parties in possession.    The relation of appellants and respondents with reference to the money must necessarily be the same as it would have been with reference to the land.    It was therefore proper for the appellants to take the affirmative.    (4)    The court properly refused to permit a nonsuit to be taken as the case had been finally submitted to the jury, and the verdict signed.    R. S. 1889, sec. 2084; Mayer v. Old, 51 Mo. App. 214.

GANTT, P. J.—On the fifteenth day of June, 1896, the plaintiff filed in the Clay Circuit Court its petition against Henry Smith and C. M. Russell, the respondents herein, and against Felix View et al., the appellants herein, to condemn a right of way through the two and one-half acres of southeast quarter of northeast quarter of section 23, township 50, range 33. In due course of procedure the damages were assessed at $2,934. The respondents, Smith and Russell, bought this land in 1881, and at the date of the institution of the condemnation proceeding they were in the actual and exclusive possession of the land. In order to secure distribution of the money Smith and Russell filed a motion setting up their purchase of the land in 1881, and their actual and exclusive possession, and asking that their co-defendants set up their claims, if they asserted any, to the money.

The appellants filed their claim in obedience to an order of court made pursuant to respondents' motion; and on the first day of November, 1897, respondents filed their amended answer to appellants' claim, and this cause was tried upon the issue thus joined. At the conclusion of the evidence the court instructed the jury to find for respondents, Smith and Russell.

The claim of respondents is based upon a record title, of which the following is a skeleton abstract:

K. C. & Atl. Ry. Co. v. View.

## RESPONDENTS' RECORD TITLE.

| GRANTOR. | GRANTEE. | DATE. | FILED. | CONS. | Bk. | Pg. | REMARKS. |
|---|---|---|---|---|---|---|---|
| 1.—United States. | Timothy Joyce. | Oct. 1, 1845. | | | | | Patent to e½ of ne¼ s 23, t 50, r 33. |
| 2.—Timothy Joyce. | T. A. Thompson. | Feb. 3, 1879. | Mch. 12, 1879. | $ 250 00 | 47 | 416 | War. deed to same land. |
| 3.—T. A. Thompson and Chas. M. Thompson, her husband; Carrie B. Thompson and Chas. F. Thompson, her husband. | Isaac R. Mendenhall. | April 17, 1879. | June 16, 1879. | 1500 00 | 47 | 586 | War. deed, w½ of se¼ of ne¼, s 23, t 50, r 33. |
| 4.—Thursa A. Thompson and Chas. M. Thompson, her husband; Carrie B. Thompson and Chas. F. Thompson, her husband. | Sarah A. Roseberry. | May 9, 1879. | June 16, 1881. | 2000 00 | 53 | 221 | War. deed, se¼ of ne¼, s 23, t 50, r 33, except ten acres in S. W. Corner. |
| 5.—Same as No. 4. | Sarah A. Roseberry. | " | " | 1000 00 | 53 | 222 | War. deed, conveys the ten acres excepted in last deed. |
| 6.—James R. Timberlake, Sheriff. | Henry Smith. | March 8, '81. | March 15, '81. | 50 00 | 52 | 6 | se¼ of ne¼, s 23, t 50, r 33. Defendants in judgment: Charles F. Thompson, Timothy Joyce, Sarah A. Roseberry, John S. Roseberry, Isaac P. Mendenhall, Thursa A. Thompson, Charles M. Thompson, William M. Burris.—Tax Sale. |
| 7.—Henry Smith. | C. M. Russell. | March 9, '81. | July 20, '81. | 338 00 | 53 | 816 | War. deed, ½ undiv'd in w½ of se¼ of ne¼, s 23, t 50, r 33. |
| 8.—Jacob H. Hymer, Sheriff. | Henry Smith and C. M. Russell. | March 2, '96. | March 27, '96. | 50 00 | 107 | 401 | Judgment, Feb. 29, '92, enforcing vendor's lien in favor of Henry Smith and C. M. Russell, and against Willard E. Winner et al. |

## THE APPELLANTS' TITLE IS AS FOLLOWS:

| GRANTOR. | GRANTEE. | DATE. | FILED. | CONS. | Bk. | Pg. | REMARKS. |
|---|---|---|---|---|---|---|---|
| Peter View. | Felix View, Trustee for Nancy View, during life and then for her children. | April 20, '60. | Dec. 16, '61. | $ 1 00 and love | U | 251 | s½ of e½ of ne¼, s 23, t 50, r 33. |
| Felix View and Nancy View. | R. W. H. Darton. | Nov. 15, '63. | Nov. 21, '63. | | U | 788 | Quit Claim Deed, s½ of e½ of ne¼, s 23, t 50, r 33. |

There is no evidence that Peter View ever purchased the land condemned in the principal case or ever had a deed to it. From aught that appears he was a squatter without color of title.

There is no evidence that Joyce, the original patentee, ever lived on the land.

In 1857 Peter View cleared a few acres of the land and built a log cabin from the abundant growth which at that time stood on the land. Peter seems to have led the life of a nomad, going from place to place, making ox bows and doing the work of a carpenter or wagonmaker as the occasion presented itself. When and where Peter died is exceedingly uncertain. He does not seem to have been with his family at the time of his death.

In 1860, for some reason, he concluded to convey what estate he had in this land, to his son, Felix G. View, in trust for the wife of Peter for her natural life, and after her death to such of the children of his said wife as should survive her and attain the age of twenty-one years.

In 1863, Felix and his mother joined in a quitclaim deed of this tract to R. W. H. Darton, who was at the time the infant son of Richard W. Darton. R. W. H. Darton was born in 1861. In 1863 Richard W. Darton moved on this tract and lived there an indefinite period, as much as three or four years, according to some.

From 1867 to 1880 there seems to have been various occupants of the log house and small clearing about it. The other land was not fenced.

How these parties came there, and by what authority was a contested point on the trial. The plaintiffs, as we must denominate the Views who are interpleading for the fund in court, offered a number of witnesses who testified to an intermittent possession of the log house and part of the land, but their evidence was very incongruous and often con-

tradictory.   Plaintiffs attempted to show that these various occupants were all in under the elder Darton, but the only testimony tending to support this theory were declarations of these persons to the effect that they were tenants of Darton. Certain it is that after the quit-claim in 1863, the present claimants, the Views, had no possession of said land and asserted no claim thereto.

But their counsel urges in their behalf that as the infant Darton took his quit-claim with knowledge of the trust in their behalf he could not hold adversely to them, and any possession he may have had must be held to have been for them as remaindermen.

It is hardly probable that the said Darton took such a view of his obligation; indeed, he seems to have been reckless of his own rights, if any he had in the premises.   He lived in Jackson county until he reached his majority in 1882, and worked on farms in that county until about 1890, when he left Missouri for California, in which State he seems to have been residing when this suit was tried, in November, 1897.

Nancy View was living when this cause was tried, in Clinton county, of this State.   The evidence shows quite conclusively that after the high water of 1877 no one lived on this land in suit and when defendant, Henry Smith, purchased at the tax sale it had all the appearance of a wild unbroken tract, covered with timber, and he bought without actual notice of any previous occupancy at any time, and sold one undivided half to his co-defendant, Russell, who was also without notice of the View or Darton occupancy.

At the close of all the evidence the court instructed the jury to find for defendants Smith and Russell.   The plaintiffs in the interplea have appealed.

I.   Owing to its importance in the consideration of other propositions, it is deemed best to determine whether

the widow and children of Peter View, and the grantees in his deed of 1860, were record owners within the meaning of our revenue laws, which require suit for delinquent taxes to be brought against the record owners.   It is quite clear that no person was in the actual possession of this land in 1881 when defendant Smith bought at sheriff's sale under the judgment for taxes.

The deed of Peter View to Felix View was clearly outside of the chain of title, and imparted no notice to subsequent purchasers.   [Crockett v. Maguire, 10 Mo. 34; Dingman v. McCollum, 47 Mo. 372; Tydings v. Pitcher, 82 Mo. 379.]

The collector then was not bound to sue the Views or their grantee, Darton.   But plaintiffs challenge the record title upon which defendants rely for that, they allege, the deed of Timothy Joyce to Thursa A. Thompson of date of February 3, 1879, shows title in fact to one J. T. Thompson, and said J. T. Thompson is not a party to said tax suit, and hence defendants are not protected by their sheriff's deed. This contention is bottomed upon the deed itself, which must be reproduced here for the solution of the point.

"Know all men by these presents, that Timothy Joyce, of the county of Franklin, State of Ohio, in consideration of the sum of two hundred and fifty dollars to him paid by T. A. Thompson, of the county of Clay, State of Missouri, have bargained and sold and do hereby grant and convey unto the said J. T. Thompson, his heirs and assigns forever, the following premises situated in the county of Clay in the State of Missouri, and bounded and described as follows: The east half of the northeast quarter of section twenty-three, township fifty, range thirty-three, containing eighty acres; to have and to hold said premises with the appurtenances unto the said T. A. Thompson, her heirs and assigns forever; and the said Timothy Joyce for himself and his

heirs, do hereby covenant with said T. A. Thompson, her heirs and assigns, that he is lawfully seized of the premises aforesaid; that said premises are free and clear from all incumbrances whatsoever, and that he will forever warrant and defend the same, with the appurtenances, unto the said T. A. Thompson, her heirs and assigns, against the lawful claims of all persons whatsoever.

"In testimony whereof the said Timothy Joyce has hereunto set his hand and seal this 3rd day of February, in the year of our Lord one thousand eight hundred and seventy-nine.

"Timothy Joyce (Seal)"

Properly acknowledged February 3, 1879, in Franklin county, Ohio, by clerk of court. Filed for record March 2, 1879, in book 47, page 416.

The point is that in the granting clause instead of using "T. A." as the given name of Mrs. Thursa A. Thompson, the initials are "J. T."

Now a court of equity would reform this deed upon its own recitals. As Thursa A. Thompson paid the consideration, as the habendum is to her and her heirs and as the covenants of title are to her and her heirs and as no such person as J. T. Thompson was shown to have ever existed in connection with this land, chancery would conform it to the obvious intention. But it seems clear to us that even a court of law may reject the initials "J. T." in the granting clause and we have a perfect conveyance unto "said Thompson," the Thompson which the preceding recital recites paid said Joyce the purchase price of said land. We do this upon recognized legal principles. It is an ancient maxim of our law that *"falsa demonstratio non nocet,"* and this maxim applies as well to persons as things. [1 Greenl. on Evid. (16 Ed.), sec. 301; Lincoln v. Thompson, 75 Mo. 613.]

Respecting the initials "J. T." as being repugnant to the

remainder of the deed it appears with almost absolute certainty that it was a deed to Mrs. Thursa A. Thompson, and that the initials were the result of carelessness in the draughtsman. So reading the deed it appears that all the parties who ever owned this land of record were brought into court and every one of them in fact appeared by attorney and judgment for the taxes for the years 1873, 1874, 1875, and 1876, was rendered in favor of the State.

That judgment became and was conclusive of all questions as to the amount of the taxes; the regularity of the assessment, the certificate of the collector, and is not open to attack in this collateral proceeding.

II. Plaintiffs complain that the court excluded certain statements alleged to have been made by the various occupants that they were in possession under leases from Darton.

That a declaration of a party in possession may be admitted to show a claim of adverse possession is true, but the distinction is well marked in this State between a declaration disclaiming title, in other words, a declaration against interest and one in favor of the declarant; the former is admissible but the latter is not. [Turner v. Belden, 9 Mo. 787; Darrett v. Donnelly, 38 Mo. 492; Morey v. Staley, 54 Mo. 421; Mylar v. Hughes, 60 Mo. 111; Martin v. Bonsack, 61 Mo. 559.] The effect of prior possession under color of title by admissions of the various occupants that they held under Darton, was but an attempt to show title by statements in favor of Darton and not adversary to their rights. It was pure, simple hearsay, and was properly excluded.

III. It was competent for the court to require the View claimants to interplead for the fund in court and as to that issue to treat them as plaintiffs upon whom rested the burden of establishing their ownership of the land condemned. Being out of possession they would have occupied the same position in an action of ejectment.

The right of the court to give a peremptory instruction after all the evidence had been heard can not longer be considered doubtful under our system. Of course had defendants introduced evidence in aid of plaintiff's case without which plaintiffs could not have recovered, the demurrer to the evidence should not have been overruled, but this was not done. After all, the real question was and is, did plaintiffs make such a showing as entitled them to go to the jury?

It must certainly be conceded that they had no paper or record title. Their only claim of color of title is under a stray deed from their father who was a naked trespasser. They then endeavored to make out title by possession, which their counsel consider sufficient, but after a careful examination of this evidence we are unable to concur with them. On the contrary, plaintiff's own evidence shows that lack of continuous possession which is essential to create title by adverse possession. Even if we consider that the various migratory occupants who from time to time settled in the cabin originally built by Peter View, were tenants of the elder Darton, the intervals in their possession were too great and too frequent to make a continuous possession. But there is absolutely no evidence that the younger Darton, to whom Felix View and his mother made the quit-claim deed, ever occupied the land or made any adverse claim to it.

On the contrary, defendants have a straight record title deduced from Timothy Joyce the original patentee of the government. They were moreover innocent purchasers without notice and for value. Since 1881, they have been in the undisturbed adverse possession of the land and were so when the condemnation was had. It seems to us the court properly considered there was nothing to submit to the jury, and properly directed the verdict for defendants.

As these conclusions lead to an affirmance of the judg-

ment, we deem it unnecessary to discuss other points raised by counsel, which, however, we have fully examined. The judgment is affirmed. All concur.