THE STATE EX REL. DELMAR E. McCASKILL v. ROBERT W. HALL, Judge of Circuit Court.—28 S. W. (2d) 80.

Court en Banc, May 15, 1930.

166

*Anderson, Gilbert & Wolfort* for relator.

*Julius T. Muench, G. William Senn, J. B. Steiner* and *Seward McKittrick, William L. Mason* and *John B. Dale* and *Marion C. Early* for respondent.

168

RAGLAND, C. J.—Mandamus. There is pending in the Circuit Court of the City of St. Louis a condemnation proceeding having for its general purpose the widening of Market Street from 3rd Street west to 39th, and there had been filed therein the report of the commissioners appointed by the court to assess damages and benefits. With respect to one parcel of land which the city seeks to condemn for street purposes the report is as follows:

"Item No. 78.

"The damages sustained by Theodosia Wallace Pleadwell, Frank L. Pleadwell, husband of Theodosia Wallace Pleadwell, Benjamin Harris, lessee; Sol Kaiser and Abe Moulton, co-partners doing

business as Kaiser & Moulton Mercantile Co., lessees; Julius C. Herrmann and Clara Herrmann, lessees; Waldemar Ude, trustee for Louise E. Huesemann; Louise E. Huesemann, Attie C. McCaskill, sublessee; Cornelius M. McDonald, trustee for John E. Stilwell; Clyde C. Ketchum, trustee for Raymond E. Gallagher; Raymond E. Gallagher, Theodore Leontsinis and Emanuel Leontsinis, sublessees; the several parties owning or claiming an interest in a lot or parcel of land, consisting of the value of the land and property proposed to be taken by the condemnation thereof, together with the improvements thereon, to-wit:

"(a)  A parcel of land in city block 903, comprising lots 13 and 12 and part of lot 11 of J. H. Lucas and A. L. Hunt's addition, a subdivision, having an aggregate front of 80' on north line of Market Street (as heretofore established 60 feet wide) by a depth, between parallel lines along the west line of Nineteenth Street (60' wide) of 73' 0½'" to a 15 foot alley bounded on the west by property now or formerly of Rudolph Realty Co., et al.; we ascertain to be $259,875; which sum the said parties shall recover from the city of St. Louis."

It appears from the petition for the writ that Theodosia Wallace Pleadwell and Frank L. Pleadwell, her husband, are the owners of the fee in the above described land; that on the —— day of —— they leased the property to Clara Herrmann and Julius C. Herrmann for a term commencing July 1, 1902, and ending on June 30, 2001, under the terms of which lease the said Herrmanns are bound to pay to the said Pleadwells as rental the sum of $3,000, per year, net; that on the —— day of —— the said Herrmanns subleased said premises for the remainder of their term to Attie C. McCaskill, under which lease the said McCaskill is bound to pay to the said Hermanns a net rental of $4,000 per year; that thereafter relator, Delmar E. McCaskill, acquired the leasehold of the said Attie C. McCaskill; and that relator on the —— day of —— leased to Theodore and Emanuel Leontsinis a portion of said premises for a term of years, commencing on the first day of January, 1920, and ending on the 31st day of July, 1929, with an option on the part of said lessees to renew for a period of ten years. It further appears that there are outstanding mortgages on some of the leaseholds.

Relator requested respondent, before whom the condemnation proceeding is pending, to require the commissioners to assess separately the value of relator's specific interest—his leasehold—in the land proposed to be condemned. Upon respondent's refusal to do so this proceeding was instituted to compel such action on his part. Whether relator is entitled to a separate assessment of damages is the single question presented for decision.

In support of his contention that he is entitled to have his damages assessed separately from those of the other several owners of interests in the property relator invokes both constitutional and charter provisions. The bearing of the constitutional guarantees will be considered first, and then the relevant provisions of the charter.

I. Relator asserts that a failure to separately assess his damages will violate the provisions of Section 21, Article II, of the Constitution of Missouri, as well as the due-process clauses of both State and Federal Constitutions. He bases his argument chiefly on the first: ". . . private property shall not be taken or damaged for public use without just compensation. . . . And until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested.'' He says that he will, or may be, compelled to bear ''the expense of representing others who claim an interest in said property and the expense of litigating with others who claim an interest in said property,'' for 'all of which expense he will receive no compensation, and that therefore his property, to that extent, will be taken without just compensation. He further says that he will, or may be, dispossessed of his property long before he receives compensation for it. ''Litigation over the distribution of the fund might, without any stretch of the imagination, continue for three or four years and thus the condemning agent would be permitted to occupy property before the owner had received the compensation or compensation had been paid into court for his use.''

The question involved is neither new nor novel, though relator's argument may be. For the general rule with reference to a separate appraisal of particular interests and estates in a single parcel of land taken in condemnation, and which is applicable on the facts here, is well established.

''When there are different interests or estates in the property, the proper course is to ascertain the entire compensation as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights. The value of property cannot be enhanced by any distribution of the title or estate among different persons or by any contract arrangements among the owners of different interests. Whatever advantage is secured to one interest must be taken from another, and the sum of all the parts cannot exceed the whole.'' [2 Lewis on Eminent Domain, (3 Ed.) sec. 716, p. 1253.]

''The situation of the estate and the manner of its occupation are doubtless to be taken into consideration in estimating the injury caused by disturbing that occupation. But between the public and the landowner it is but one estate. The public right is exercised upon

the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners. The public cannot be expected to forego its right to take property for public uses because the exercise of that right will defeat private contracts; nor is it reasonable that losses arising from the failure of such contracts, which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken. Such a rule would seriously impair the public right. A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived. That is the whole of the transaction with which the public is concerned. The apportionment is merely a setting out to the several owners of partial interests of their corresponding rights in the fund which has been substituted for the property taken." [Edmands v. Boston, 108 Mass. 535, 544.]

"It is settled, however, that condemnation proceedings are *in rem*, against the property, for which the award, when made, stands as belonging to those formerly having interests in the property and in the same proportion. [Citing cases.] . . . Whether separate awards are necessary under circumstances such as here disclosed has never heretofore been considered by this court. The question was raised, but not decided, in Smith v. City of St. Paul, supra. The uniform practice, however, has been, as we understand it, to consider the property about to be condemned as an entire estate so far as concerns the public, the fee owner, and those having lesser interests therein. All persons are made defendants whose interests are to be foreclosed; but this is done, not for the purpose of determining questions of title between them, but so that they may be heard upon the issues of the right to condemn and the amount of damages to be awarded in gross. While, therefore, apportionment and separate awards are often convenient and beneficial where several persons own interests in a single tract or parcel of land, and while, furthermore, such are quite commonly made where the proceedings are in a court or tribunal having power and capacity to inquire into the variant interests, even in the latter case the well nigh universal mode of reaching a fair valuation of the property and determination of the damages, is to consider the property as though the entire and undivided estate and all interests in the property were in a single person, and to find the value and damage in gross, thereafter apportioning the amount of the award thus arrived at between the various parties according to their interests. [Citing cases.] And neither a separate assessment nor a subsequent apportionment of a gross award is necessary to render the assessment valid under constitutional limitations relative thereto." [State ex rel. Kafka v. District Court of Ramsey County, 128 Minn. 432, 436, 437.]

Similar views were expressed by this court in the comparatively recent case of Morgan v. Willman, reported in 318 Mo. at pages 151 and following.

The doctrine of the cases tersely stated is this:

The aggregate value of all the particular interests and estates in a single parcel of land do not exceed the value of the property as a whole, which the State takes by paramount title for public use; when, therefore, that value is duly ascertained and paid in money to the owners of the various interests, or into court for them, constitutional requirements are fully complied with. The fund is substituted for the property taken. The fact that the owners of the constitutive interests may not agree as to the apportionment among themselves of the sum awarded is merely an incident growing out of such combined ownership for which the condemnor is in no way responsible. There may be instances in which, owing to exceptional circumstances, the damages to the various interests when added together exceed the value of the property as a whole; in such case the particular interests should of course be separately appraised, because the owner of each is entitled to be compensated in damages for the amount of his interest taken. [See Baltimore v. Latrobe, 101 Md. 621.] But no showing of that kind was made in the circuit court in the proceeding under consideration, nor is any such contention made here.

II. The charter requirements on which relator relies are found in Article 21 of the Charter of the City of St. Louis. The pertinent provisions are as follows:

"Section 1. Condemnation of or damage to private property, real or personal, or any easement or use therein for public use shall be effected as herein provided and as may be further provided by ordinance not inconsistent with this charter. Upon the board of aldermen providing by ordinance, recommended by the board of public service, (1) for the appropriation of any private property or any easement or use therein for any public use, or (2) for any public improvement or work which will damage private property, the city counselor, in the name of the city, shall apply promptly . . . . to the circuit court of the eighth judicial circuit, or to any judge thereof in vacation, by petition setting forth the general nature of the public use for which the property is to be appropriated or damaged, a description of the property, and the estate or interests therein in each instance which the city seeks to appropriate or damage, and praying the appointment of three disinterested commissioners to assess damages and benefits as hereinafter provided, to which petition the owners shall be made defendants by name, if known, and if unknown, by describing their claims and interests in such property and how derived by them. . . ."

"Section 3. The court, or a judge thereof in vacation, when notice has been given as herein provided, shall appoint three disinterested

commissioners, . . . to assess the damages which the owners may severally sustain by such taking or damaging, and to assess benefits as hereinafter mentioned: . . ."

"Section 4. It shall be the duty of the commissioners, : . . to ascertain the value of the property proposed to be taken and the actual damage done to private property. . . . For the payment of all such damages the commissioners shall assess against all the lots or parcels of property or interests therein especially benefited by the proposed public work or improvement, separately and in the name of the several owners thereof, the amount that each such lot or parcel of property or interest therein so assessed shall be especially benefited by the proposed public work or improvement. . . ."

"Section 5. The commissioners shall view the property to be taken, damaged, or assessed; fix the benefit or taxing district; . . . hear the evidence submitted by the parties interested; assess the damages and benefits as of the date said ordinance became effective; and make report, in which at least two commissioners shall concur, of such assessment in writing and under oath to the circuit court. In such report the compensation allowed to and the benefits assessed against each owner shall be separately stated. When the commissioners both assess benefits and allow damages against any one property owner they shall deduct the lesser from the greater."

"Section 8. The court upon approving the commissioners' report shall render final judgment thereon reciting the report and adjudging that the city have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in such instance; that so much of the report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment, and prior to all other liens thereon; and that the city recover the respective benefits in excess of damages assessed in each instance against private property with interest from date of judgment and have execution therefor. . . ."

Relator contends that through the foregoing charter provisions "the specific intent is expressed that the owner of such interest in the property shall have his damages allowed separately and his benefits assessed against him separately, in order that he may know just how much the commissioners have allowed him for his property and how much they have assessed against him for the benefits accruing to his interest in the property." Some of the provisions, owing to the language in which they are couched, give countenance to relator's contention when isolated and considered separately and apart from the general scheme provided for the acquisition of private property for public use. They must, however, be construed in connection with all the provisions which go to make up the plan as a whole and of which they are integral parts.

Article 21 of the Charter contemplates the joining in the same petition of all the persons who severally own the parcels of land which comprise the land as a whole to be taken for the public use. Section 1 requires that the petition contain "a description of the property, and the estate or interest therein in each instance which the city seeks to appropriate." The property which must be described is that *which the city seeks to appropriate*. If the city seeks merely to appropriate a particular estate in a parcel of land, such estate must be described; if only a particular interest in the land, then such interest must be described; but if the city proposes to appropriate the land itself, a description of the land, regardless of the various interests therein which may be severally owned by a number of persons, is all that is required. The owners of the constitutive interests must be named as defendants, but it is not necessary that their several interests be described where the city seeks to appropriate the whole. [See State ex rel. Siegel v. Grimm, 314 Mo. 242, 284 S. W. 490.] It seems plain therefore that the property, or the estate therein, cr the interest therein, which the city seeks to appropriate, is to be regarded as the thing dealt with in the condemnation: it is the thing to be described and valued and taken *as a unit*. And if so, the language of Section 3, "assess the damages which the owners may severally sustain by such taking," distributes the damages, in their assessment, according to the separate and distinct properties taken, and not on the basis of the particular interests which may be several-ly owned in a specific property. Similar provisions of other condemnation statutes have received like construction, expressly or implied-ly, in many decisions of this court. [Morgan v. Willman, supra; Union Depot Co. v. Frederick, 117 Mo. 138; Kansas City etc. Ry. Co. v. Dew, 156 Mo. 608, 57 S. W. 555; Murphy v. Barron, 286 Mo. 390, 228 S. W. 492; Railroad Co. v. Storey, 96 Mo. 611, 10 S. W. 203.]

Section 4 relates principally to the assessment of benefits. Its requirement that benefits shall be assessed "separately and in the name of the several owners" of the "lots or parcels of property or the interest therein especially benefited" is expressed in language just as positive and emphatic as that employed with reference to the assessment of damages "which the owners may severally sustain." But does it mean that where, for example, the owner of the fee in a single parcel of land has leased the land for a long term of years and his lessee has subleased it to another and the latter has mortgaged his leasehold, the commissioners must ascertain and assess in the name of the owner of each of the several interests the specific amount which his particular interest is especially benefited? Clearly not, for Section 8 contemplates that a single judgment *in rem* shall be rendered for the benefits to a specific property, to satisfy which the property as a whole may be sold under special execution.

The various elements of the ownership of modern city property are so numerous and so complex that if commissioners were compelled

to segregate and value separately each particular interest therein, their work being frequently halted to await settlement in court of the controversies that inevitably arise among the owners of the interests, there would be no end to a condemnation proceeding such as the one here involved. In the absence of explicit language requiring the separate valuations of such interests it cannot reasonably be held that the framers of the Charter intended that public improvements should be so delayed.

In view of the conclusions reached herein relator is not entitled to the relief prayed. A peremptory writ is accordingly denied. All concur.