IN THE MATTER OF THE APPLICATION OF BESSIE S. AKANA, A DEFENDANT IN CIVIL NO. 3234, TERRITORY OF HAWAII *v.* SAMUEL RENNY DAMON, HERMAN VALDEMAR VON HOLT, DAVID HEBDEN PORTEUS, AND JOHN EDWARD RUSSELL, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF SAMUEL M. DAMON, DECEASED, ET AL., ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, FOR A WRIT OF MANDAMUS DIRECTED TO ALBERT M. FELIX, THIRD JUDGE OF THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, TERRITORY OF HAWAII.

No. 4066.

ARGUED MAY 9, 1958.     DECIDED JUNE 6, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Petitioner has appealed to the United States Court of Appeals for the Ninth Circuit from the judgment of this court denying her petition for a writ of mandamus. After she filed her notice of appeal, petitioner filed in this court a motion for an order staying the trial of Civil No. 3234 in the court below until her right to participate therein should be determined on appeal. Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke, thereafter, filed in this court a motion to dismiss petitioner's appeal.

Upon the filing of the notice of appeal to the court of appeals, the Federal rules of civil procedure apply to the instant case, and the authority of this court over the case is that of a United States district court under such rules, not the authority of the supreme court under the Hawaii rules.

Petitioner's motion is not for a stay of any further proceeding in the instant case in this court. It is a motion for an injunction directed to the court below pending appeal. Thus, rule 62 (c) of the Federal rules applies to the motion.

Rule 62 (c) recognizes the power of the district court to preserve the status quo pending appeal and is an exception to the rule that perfection of appeal deprives the district court of jurisdiction to act further in the appealed case. The exercise of the authority under the rule rests within the sound discretion of the district court.

The trial in the court below is set for July 16, 1958. It is for the purpose of determining the compensation payable for the property presently sought to be condemned. The property presently sought to be condemned is the interest of Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke, being a reversionary interest, or a fee simple interest subject to existing tenancies.

Petitioner contends that she and the other defendants in Civil No. 3234 on whose behalf she prosecuted the petition for a writ of mandamus have "a right to have the value of their improvements which are a part of the land being condemned determined in the same trial and by the same jury as determines the value of the interest of said defendants Loo and Luke in the land condemned," and such right will be rendered nugatory if the court below is not enjoined from proceeding with the trial of the condemnation case.

In our opinion in the instant case reported on page

415, *ante,* we did not discuss this contention because we deemed such discussion unnecessary in view of our holding that the interests of the petitioner and other tenants similarly situated were not sought to be taken in the condemnation case.

Petitioner's contention is based on the unit rule of valuation in condemnation, which forbids the separate valuation of the land and the improvements thereon. In *United States* v. *City of New York,* 165 F. (2d) 526, the court, per Judge Learned Hand, said of the unit rule as follows:

"Although the 'Unit Rule' would seem to be in the shadowland between substance and procedure, and as to the last we look to the state law, we shall not try to assign any place to it, because we are not aware of any ascertainable difference upon the point between the state and the federal decisions. Indeed, we think that it is an undue simplification to extract from the books any 'Unit Rule' whatever, in the sense of general authoritative directions. What has happened, so far as we can see, is that, as different situations have arisen, the courts have dealt with them as the specific facts demanded. One of these situations has been when a parcel or plot of land has been improved, and when — as is substantially always the case — it is impossible to separate the improvements so as to transfer them independently. In such situations the only exchangeable property is the union of 'site' and improvements; and this, being indissoluble for purposes of transfer, must be valued as one. The argument runs that, because of this it is erroneous as a matter of law ever to add together a supposititious 'site' value and a supposititious improvement value. The argument, so put, is undoubtedly a highly important caution, when the attempt is made to appraise improved land by a process

of cumulation; but we question whether it has any further office than to keep before the tribunal the only relevant objective: the exchange value of the newly emerged unit. It is true, when an area has been subdivided into plots that the very fact that these have been made separately saleable, will ordinarily make it desirable to appraise the whole by separate valuations of each plot; but even that is not, so far as we can see, an inexorable condition. Be that as it may, it certainly does not follow, because 'site' and improvements have been inextricably welded, that it is never possible to come at their joint value by attributing one factor to 'site' and another to improvements. Value, especially when we are dealing with non-fungibles, is in application as impalpable a concept as can be, and we should be unwilling to circumscribe the approach to it to the opinions of experts. All that we can gather from the books is that the tribunal must be strictly on guard that it has to do with an indivisible object of transfer." In that case, the court approved a separate valuation of the interests of the tenants "in the houses they had built on the plots, which they had reserved in their leases."

In this jurisdiction, whatever may have been the practice before the amendment of R.L.H. 1945, § 314, by Act 200 of the Session Laws of Hawaii 1947, after the effective date of the amendment, the unit rule applies where the land and improvements are owned by the same owners, but it does not apply where the owners of the land are different from the owners of the improvements. The pertinent provision of R.L.H. 1945, § 314, as amended, now incorporated in R.L.H. 1955, § 8-21, reads as follows: "In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned *with* all improvements thereon shall be assessed, and *if any of the improvements are sepa-*

*rately owned, the value thereof shall be separately assessed."* (Emphasis supplied) Before the amendment, the provision in R.L.H. 1945, § 314, read as follows: "In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned and all improvements thereon, shall be separately assessed."

In view of R.L.H. 1955, § 8-21, we conclude that the petitioner and other tenants similarly situated are not entitled, as a matter of right, to have the value of their improvements determined in the same trial and by the same jury that determines the value of the reversionary interest of Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke. Furthermore, the condemner and the owners of the reversionary interest stand to be substantially prejudiced by the delay in trial, the condemner by the possibility that it might be burdened with the payment of interest during the period of delay on the amount of additional compensation that might be awarded to the owners of the reversion and the latter by loss of use of such additional compensation. It may be noted that the petitioner requests that the trial be stayed without the requirement of any bond in addition to the bond for costs on appeal.

We, therefore, deny petitioner's motion. The denial of the motion will not deprive the petitioner and other tenants similarly situated of their day in court for the determination of the value of their improvements, if the improvements should be taken.

We, also, deny the motion of Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke to dismiss petitioner's appeal. Dismissal of appeal is not one of the powers reserved to this court after the perfection of appeal.

*Harriet Bouslog (Bouslog & Symonds)* for petitioner, for motion to stay and contra to motion to dismiss.

*John P. Russell,* Special Deputy Attorney General, and

*Harold W. Nickelsen,* Assistant Attorney General, for the Territory.

*J. Garner Anthony (Robertson, Castle & Anthony)* and *Chuck Mau (Mau, Hong & Kanemoto)* for Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke, for motion to dismiss and contra to motion to stay.

DISSENTING OPINION OF STAINBACK, J.

I respectfully dissent from the opinion of the majority herein refusing to grant petitioners' motion for a stay. We need not resort to the Federal rules of civil procedure but this court, under the statute giving it general superintendence of courts of inferior jurisdiction, has the right to delay a trial until the Circuit Court of Appeals has passed upon the various questions involved in this appeal. In *Whittemore et als.* v. *Farrington, et als.,* No. 3032 in this court, such a stay was made by the present Chief Justice on the 6th day of June, 1955.

As pointed out in the dissent from the original opinion in this case, "When there are different interests or estates in the property, the proper course is to ascertain the entire compensation as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights." (2 Lewis on *Eminent Domain* [3d Ed.], § 716, p. 1253.) In Lewis, the further statement is made "In estimating the compensation to the owner of any particular interest or estate less than the whole, the same general rules apply as in estimating the compensation when the entire interest is in one person." To this rule there may be a few exceptions, depending to a large extent upon particular circumstances.

In *State ex rel. McCaskill* v. *Hall,* 28 S. W. (2d) 80, 81 (1930), the statement in Lewis on *Eminent Domain* is quoted. The court stated:

"The uniform practice, however, has been, as we understand it, to consider the property about to be

condemned as an entire estate, so far as concerns the public, the fee owner, and those having lesser interests therein. All persons are made defendants whose interests are to be foreclosed; but this is done, not for the purpose of determining questions of title between them, but so that they may be heard upon the issues of the right to condemn and the amount of damages to be awarded in gross. While therefore apportionment and separate awards are often convenient and beneficial where several persons own interests in a single tract or parcel of land, and while, furthermore, such are quite commonly made where the proceedings are in a court or tribunal having power and capacity to inquire into the variant interests, even in the latter case the well-nigh universal mode of reaching a fair valuation of the property and determination of the damages is to consider the property as though the entire and undivided estate and all interests in the property were in a single person, and to find the value and damage in gross, thereafter apportioning the amount of the award thus arrived at between the various parties according to their interests."

This case is followed in *City of St. Louis* v. *Rossi,* 333 Mo. 1092, 64 S. W. (2d) 601, 605 (1933).

*United States* v. *25.936 Acres of Land, etc.,* 153 F. (2d) 277 (1946), holds:

"Where land in which various persons have separate interests or estates is taken by federal government for public use, the amount of compensation to be paid must be determined as if the property was in a single ownership and without reference to conflicting claims or liens."

An early case, *Kohl et al.* v. *United States,* 91 U. S. 367 (1875), where there was a joint proceeding against all owners of land proposed to be taken, held the statute

"treats all the owners of a parcel of ground as one party, and gives to them collectively a trial separate from the trial of the issues between the government and the owners of other parcels * * *." The statute of Ohio secured to the owners "of each separate parcel" a separate trial, but the court is not required to allow a separate trial to each owner over an estate or interest in each parcel.

Other cases similarly holding are *Grand River Dam Authority* v. *Gray,* 192 Okla. 547, 138 P. (2d) 100 (1943); *Meadows et al.* v. *United States,* 144 F. (2d) 751 (1944); *Carlock* v. *United States,* 60 App. D. C. 314, 53 F. (2d) 926 (1931); *Bellaire* v. *Baltimore & Ohio R. R.,* 146 U. S. 117 (1892); *New Jersey Highway Authority* v. *J. & F. Holding Co.,* 40 N. J. S. 309, 123 A. (2d) 25 (1956).

In *Bogart* v. *United States,* 169 F. (2d) 213, it is said:

"A condemnation proceeding is an in rem proceeding and when land is taken in which separate interests or estates are owned by two or more persons, as between the public and the owners, it is regarded as one estate. One award as just compensation for the entire value of the land is made and it stands in place of the property appropriated as the equivalent thereof. The distribution of the award between the owners of separate interests or estates is a matter wholly between them and the public is not concerned therewith."

The majority opinion herein cites *United States* v. *City of New York,* 165 F. (2d) 526, in a discussion of the so-called "unit rule" in condemnation proceedings. We have no quarrel with the various holdings in that case. It involved condemnation by the United States Government against the City of New York and various other claimants of a tract of land next to the Brooklyn Navy Yard known as "Wallabout Market." The tract involved some 53 acres on both sides of Washington Street, Brooklyn, parts being on the waterfront and much the greater part under water.

The dry part had been "improved," that is, streets and sidewalks had been opened and paved, bulkheads had been built on the waterfront, sewers and water mains had been laid. It was occupied for business purposes, being for the most part covered with buildings owned by the City and some by private persons. On the land under water piers had been built out from bulkheads; one of these was used as a "freight terminal." The government deposited $4,000,000 in payment for the whole area, which was later increased by $261,230, and asked for the liquidation of all claims. Three commissioners were appointed who sat for more than two years taking evidence. The commissioners made an award in twelve separate items and the objection of the United States was that in so doing they violated what it called the "unit rule." The award to the private house owners was composed of three items: (1) the interest in the houses they had built on the plots, which they had reserved in their leases; (2) for the value of their terms for years, as interests in the land itself; (3) for their interests in the irremovable fixtures. The court held that in fixing the awards the commissioners could properly assess buildings, sheds, piers, and refrigeration lines on the land separately from the value of the lands and, further, so far as the commissioners meant to set a value to the structures which they added to the site value would stand as such, but the same was not true of the second item, namely, *the leasehold interest,* stating: "The value of the lessees' terms for years was part of the value of the fee itself, and any separate allowance for them was obvious duplication, so far as concerns the United States." It then continued "The item for 'leaseholds' must moreover be reassessed before it is allowed against the City; the assessment of the 'site' values may change it." And it concludes that "the item, 'Leaseholds' will have to be reassessed for the reason already given; and it will be deducted

from the City's award." Obviously, there is nothing erroneous in the conclusion of the court that the value of the fee so far as the remaindermen is concerned is the fee simple value less the value of the leasehold.

This case held that just compensation for land taken by the Federal Government is a "Federal question" as to which state decisions are not authoritative; it also held where areas have been subdivided into plots and plots have been made separately salable would ordinarily make it desirable to appraise the whole in condemnation proceedings by separate valuations of each lot. It further stated that where a parcel of land has been improved and when, as is substantially always the case, it is impossible to separate the improvements so as to transfer them independently, then the only exchangeable property is the union of site and improvements and this being indissoluble must be valued as one, although it cautions against attempting to add together a suppositious site value and the suppositious improvement value.

Following the line of reasoning in the case of *United States* v. *City of New York, supra,* the value of the land as of September 13, 1957, must be found, this value to include all improvements thereon; then the value, if any, of the leaseholds including the improvements, which by stipulation go to the lessees, must be deducted, so as to leave that to which the owners of the fee are entitled. This cannot be done if the owners of the fee are permitted to try the value of their fee separate and apart from the leasehold and improvements on the property. The improvements upon the property as of September 13, 1957, are clearly a part of the "lands" which the Hawaii Aeronautics Commission directed the attorney general to condemn for airport purposes. The attorney general had no authority to proceed otherwise.

In view of the fact that the court below allowed a dis-

continuance as against the lessees, it is difficult to see how this will not deprive the petitioners of "their day in court for the determination of the value of their improvements, if the improvements should be taken." (Majority Opinion.) Obviously with the order of September 20, 1957, putting the Territory in possession of the lands and the allowance of the discontinuance against these petitioners, the court decided these lessees had no rights therein except to remove their buildings. If the lessees hereafter attempt in any way to proceed against the Territory, the court below would reiterate its conclusion unless a higher court directs it upon the method of valuation of the interests of the lessees and the fee holders. Such decision would require another appeal to this court by these lessees and probably to the Circuit Court of Appeals at an expense they could ill afford.

It is difficult to follow the argument of the majority opinion that Act 200, Session Laws of Hawaii 1947, changed the method of valuing lands and improvements in cases of condemnation. In fact, the whole amendment, as will be shown hereinafter, is to substitute the attorney general for the superintendent of public works in condemnation proceedings.

Section 314, Revised Laws of Hawaii 1945, regarding the assessment of damages provided that the property should be valued and all improvements thereon should be separately assessed, and if the property sought to be condemned constitutes only a part of a larger tract the damages which will accrue to the portion not condemned by reason of its severance must be assessed (separately) and the benefits, if any, by reason of construction of improvements by the government must be assessed and deducted from the damages.

The amendment (Act 200, Session Laws of Hawaii 1947) provides "The attorney general of the Territory

may, at the request of the head of any department of the Territory, or as otherwise provided by law, institute proceedings on behalf of the Territory for the condemnation of property as provided for in this chapter." This substitutes the attorney general for the superintendent of public works in condemnation proceedings. The amendment does make somewhat clearer that the improvements upon property must be separately valued by inserting therein the additional provision that if any of the improvements are separately owned, the value thereof shall be separately assessed. However, the separate assessment of improvements and site does not necessarily require or permit separate trials. The statute provides for such separate assessments of the site and improvements in the same trial.

The reports of the judiciary committees of both the House and the Senate on Act 200 show the purpose of the bill, in addition to several minor amendments, is to substitute the attorney general for the superintendent of public works. The House judiciary committee report is as follows:

"This bill amends the eminent domain laws, and provides that territorial condemnations shall be instituted on behalf of the Territory by the attorney general, as requested by department heads, instead of all such suits being brought by the superintendent of public works as at present. The present provision is not appropriate in some cases, for example, where the commissioner of public lands is charged with the duty of acquiring the land involved. The method of obtaining possession of property in eminent domain proceedings is simplified by this bill and it further is provided that upon the condemnation of private fishing rights an order of possession may be obtained. The bill makes other minor amendments. These portions of the bill are favored by your committee."

The report of the Senate judiciary committee is similar.

Certainly if there was any intent on the part of the legislature to change in any manner the so-called "unit rule" of valuation or give separate trials to the owners of the fee, the committee reports would have contained some reference thereto.

The stay would not work any injustice upon the owners of the fee inasmuch as if they obtained a greater amount than that which was deposited with the court they would be entitled to interest at six per cent upon all unpaid amounts from the date of the issuance of summons. Certainly no one could ask for a better investment than a six per cent return on such a government obligation. Further, the attorney general did not oppose the stay and does not insist upon a supersedeas bond unless the stay runs longer than September as, according to his statement, no damage would result until the Territory becomes in a position to pay such awards.

In my opinion a stay should be granted so that "The uniform practice * * * to consider the property about to be condemned as an entire estate, so far as concerns the public, the fee owner, and those having lesser interests therein" be followed.