THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. MARY E. WILSON *et al.*

No. 12,740.   (69 Pac. 342.)

SYLLABUS BY THE COURT.

RAILROADS—*Right of Way—Right to Condemnation Money.* The
fact that a railroad company has conducted land-condemnation
proceedings to completion, and has deposited the condemnation
money with the county treasurer, does not preclude it from re-
claiming the deposit, if it has abstained from making an actual
entry on the land for the purpose of constructing its road, and
has abandoned its intention to use the land for such purpose, and
has given notification of such abandonment.

Error from Johnson district court; JOHN T. BURRIS,
judge. Opinion filed July 5, 1902. Division two.
Reheard *in banc* and an opinion *per curiam.* filed Janu-
ary 10, 1903. Reversed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.
*I. O. Pickering,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action of mandamus
to compel the county treasurer of Johnson county to
pay a sum of money deposited with him by the Atchi-
son, Topeka & Santa Fe Railway Company as an
award of damages assessed by right-of-way commis-
sioners. The railway company was allowed to in-
tervene in the suit and defend for the treasurer.
Judgment went against it; wherefore it has prose-
cuted error to this court.

The commissioners' report assessing damages was
filed with the county clerk on November 30. On the
same day a copy of the report was filed with the
county treasurer, accompanied by a deposit of the
condemnation money, and on December 10 a copy of

the report of condemnation was recorded in the office of the register of deeds. These proceedings were in regular conformity with the statute concerning the appropriation of land for railway purposes. (Gen. Stat. 1901, §§ 1359–1364.) The landowners had ten days from the date of filing the report in the clerk's office within which to appeal from the award of damages. (§ 1364.) They did not appeal, but, instead, demanded the money deposited with the treasurer. This demand was made both during and subsequently to the time allowed for appeal, but it was on each occasion refused. The railway company never entered upon, or anywise took possession of, the land condemned, but, on the contrary, determined not to use or claim it. On December 12, two days after the expiration of the time for appeal, it notified the treasurer of its abandonment of its rights under the condemnation proceeding, and demanded the return of the money deposited in pursuance of the award. The demand was refused. Out of the facts thus summarized the action arose.

The claim on the part of the railway company is that, inasmuch as it did not make final assertion of its rights under the condemnation proceedings, but, on the contrary, abandoned them before the condemnation money passed to the landowners' hands, it was entitled to reclaim the deposit made with the treasurer. The claim on the other side is that the rights of the parties became fixed by the filing of the report of the award, and the demand for the money made on the treasurer, or, at farthest, at the expiration of the time for appeal; that at that time title to the easement passed to the company and title to the money to the landowners, and that thereafter no act of renuncia-

Railway Co. v. Wilson.

tion short of mutual rescission could divest either of their rights.

In several decisions of this court it has been remarked that when condemnation proceedings have been properly conducted to the end, and the award has been paid, an easement becomes vested in the railway company. ( *Blackshire v. A. T. & S. F. Rld. Co.*, 13 Kan. 514; *C. K. & W. Rld. Co. v. Sheldon*, 53 id. 169, 35 Pac. 1105; *W. & W. Rld. Co. v. Thayer*, 54 id. 259, 38 Pac. 266; *Phipps v. Railway Co.*, 58 id. 142; 48 Pac. 573.) If this be true, there follows, of necessity, the corollary proposition of title in the landowner to the money awarded.   However, an examination of the cases in which these remarks occur will show that they were not made with respect to any dispute as to the precise time at which title passed, or for the purpose of fixing a definite point at which in all cases it should be said to pass, but they were made in assertion of the general proposition that title passes on the conclusion of the proceedings and payment of the money, and were made in cases where the railway companies were not seeking to abandon their rights under the proceeding, but, on the contrary, were seeking to assert them.

In the case of Blackshire, *supra*, it was said : "When the time for appeal has expired, then the right of way is appropriated." That however was said *arguendo* in the discussion of the proposition that, up to the time mentioned, the money deposited remained in the hands of the treasurer at the company's risk of its loss.   In that case the company was asserting its rights under the condemnation, and, doing so, the question was at what time did its ownership of the money cease and that of the landowner begin.

In the cases of *C. K. & W. Rld. Co. v. Sheldon*, supra,

and *W. & W. Rld. Co. v. Thayer*, supra, mortgagees of
the land attempted foreclosure after the final conclu-
sion of the condemnation proceedings and the accept-
ance of the award by the mortgagors, the owners of
the title.   In deciding against the right of foreclosure
it was observed that the title to the easement became
vested in the company upon the deposit of the con-
demnation money with the treasurer.

In *Phipps v. Railway Co.*, supra, it was held that con-
demnation proceedings regularly conducted through-
out, followed by a deposit of the condemnation money
with the treasurer, and its payment by that official
to the owner of the record title after the lapse of time
for appeal, protected the company against the secret
equities of other persons ; and in the opinion it was
remarked that the condemnation proceedings perfected
a "valid title" in the railway company.

As before observed, none of these cases called for a
determination of the precise point of time at which
the owner's title to the easement and the company's
title to the money became so far divested as that the
latter could not renounce its rights under the proceed-
ing and reclaim the deposit made.   The decisions
were all made in respect to the company's right to as-
sert title to the easement, not to abjure it.   That the
initiation, or even the completion, of right-of-way pro-
ceedings does not impose an obligation to take and
pay for the land has been, in general terms, remarked
by this court, although never decided as a substantive
issue in any case.   ( *Blackshire v. A. T. & S. F. Rld.
Co.*, supra ; *St. L. L. & D. Rld. Co. v. Wilder*, 17 Kan.
239 ; *City of Kansas v. K. P. Rly. Co.*, 18 id. 331 ;
*Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 id. 158, 8 Pac.
138, 55 Am. Rep. 242 ; *L. N. & S. Rly. Co. v. Whitaker*,
42 id. 634, 22 Pac. 733.)   That such right of abandon-

ment exists, and that it carries with it the right to re-claim the condemnation money, there can be, we think, no doubt.   In Elliott on Railroads, volume 3, section 1033, it is said :

"The weight of authority holds that the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property, unless the statute gives it some greater effect, and that the company may, within a reasonable time after the judgment or confirmation, abandon its proceedings without incurring any liability to pay the damages awarded."

In Lewis on Eminent Domain, section 656, it is said :

"The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation of judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded."

It is probable that an abandonment of the company's purpose to use the easement condemned, occurring after the money had passed to the hands of the landowner, would not carry with it the right to demand repayment.   With that, however, we have no concern.   Our question relates to the right of reclamation before payment has been in fact made.   The determination of the question requires an interpretation of the statute relative to the time at which title passes in one case to the company, and in the other to the landowner.   Sections 1361 and 1362 of the General Statutes of 1901 read as follows :

"§ 1361.   Such county clerk shall forthwith prepare and file in the office of the treasurer of such county a copy of such report ; and if such company shall cause

to be paid to such treasurer the amount in full of such appraisement, within ninety days of the time of filing such copy in such treasurer's office, such treasurer shall thereupon certify such fact upon the copy of the report, under his hand and seal of office, and shall, upon demand of the persons severally entitled thereto, pay over the amounts of such fund to such persons as shall be respectively entitled thereto.

"§ 1362. If such company shall cause the copy of the report, so certified, to be, within ten days after such certifying, filed and recorded in the office of the register of deeds for such county, it shall have the right to occupy the land so embraced within such route, for the purposes necessary to the construction and use of its road; and to such portions of such road over which a railroad shall be actually constructed within such time, the perpetual use of such lands shall vest in such company, its successors and assigns, for the use of the railroad, as soon as so much of such railroad shall have been constructed fit for use."

It will be observed that section 1362, above quoted, declares a time at which "the perpetual use of such land shall vest in such company." What is that time? Reasonably it cannot be the intermediate ten days between the treasurer's certification of the commissioners' report, required by section 1361, and the filing and recording of such report with the register of deeds, required by section 1362, because it would be idle to contemplate the actual construction of any portion of a railroad "within such time." Grammatically, the antecedent of the phrase "such time" is the "ten days" spoken of in the preceding part of the section, but sensibly such cannot be the case. A careful reading of the whole section will disclose that the pronominal phrase has a prospective, instead of a retrospective, reference. It refers to the time mentioned in the final clause of the sentence and section, to wit: "As soon as so

much of such railroad shall have been constructed fit for use.'' This becomes evident by making a transposition of that clause from the last to the first place, so that it may read as follows : ''As soon as so much of such railroad shall have been constructed fit for use, and to such portions of such road over which a railroad shall be actually constructed within such time (the time of its construction fit for use), the perpetual use of such lands shall vest in such company, its successors and assigns, for the use of the railroad.'' This rearrangement of clauses may yet leave something to be desired by the punctilious grammarian, but it saves the statute from absurdities of meaning and impossibilities of execution, and brings out the evident sense of the legislature in enacting it.

Title to a railway easement, therefore, does not vest in the company until the railroad has been actually constructed fit for use.  Before that time the company has only ''the right to occupy the land so embraced within such route, for the purposes necessary to the construction and use of its road.''  That right is conferred by the clause just quoted from the first part of section 1362 ; but the law does not pass the actual title to the easement until the construction of the road. Nor should title pass until that time, because the company acquires the easement for purposes of actual use and for nothing else, and, until actually ready to use it, it has no business to have it.

So far, therefore, as the actual point of time at which title to the easement passes to the company determines the point at which title to the condemnation money passes to the landowner, the actual construction of the road is the time.  But that in reality is not the time at which the owner becomes entitled to the money.  The statute, section 1361, *supra*, declares that after the deposit of the money with the

treasurer that official shall, "upon demand of the persons severally entitled thereto, pay over the amounts of such fund to such persons." That statute, however, contemplates a case of manifested intention to build the railroad, not a case of declared intention not to build it. It contemplates a case of continued tender of the condemnation money by the railroad company to the landowner, not a proffer of it one day and a notification of withdrawal the next. It is a statute which vests rights in the landowner as against the treasurer in respect to the railroad company's declared intention to take the former's land, but it does not provide for a case in which the company has reconsidered its purpose to take the land, has declared its purpose not to take it, and has abstained from making any actual entry on it. The rights of the parties in such case as that must be governed, therefore, by some other than the statutory rule. That rule must be one equitable in its nature. Surely the law would not mean to give the landowner the company's money for land which it had not in fact taken, and on which it had not actually entered for the purpose of taking it, when the intention to take it, though once declared, had been expressly abandoned, merely because the legal formalities looking to the taking of it had been carried to a conclusion.

There are no cases directly in point decided under statutes similar to ours. The case of *Manion v. Louisville, St. Louis & Texas R. Co.*, 90 Ky. 491, 14 S. W. 532, is more nearly like this one than any others, and it, in general principle, supports the decision we make.

The judgment of the court below is reversed, with directions to enter it anew for the defendant, the plaintiff in error here.

All the Justices concurring.