No. 30,179.

CHESS E. TODD, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

(7 P. 2d 79.)

Opinion filed January 30, 1932.

*C. W. Trickett,* of Kansas City, for the appellant.

*William R. Smith, Alfred A. Scott, C. J. Putt,* all of Topeka, *E. S. McAnany, M. L. Alden* and *Thomas M. Van Cleave,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Chess E. Todd to recover an award made and damages against the Atchison, Topeka & Santa Fe Railway Company for the alleged injuries sustained in the attempted abandonment in a condemnation proceeding of lands sought to be obtained for the use of the railway company. The plaintiff filed a petition reciting the steps taken in the condemnation proceeding, which proceeded to a finding of the jury as to the value of the land sought to be taken, after which a notice of abandonment was served. The court sustained a demurrer to plaintiff's petition, holding that a cause of action was not stated, and from that ruling plaintiff appeals.

It appears that on February 24, 1927, the railway company made application to the judge of the district court for the appointment of commissioners. Commissioners were appointed to appraise the value of real estate desired to be obtained under the right of eminent domain. Notice was given by the commissioners that they would meet and appraise the land desired on April 5, 1927. An appraisement was then made fixing the value of a tract consisting of 77.56 acres of land at $50,414.

An appeal from this award was taken by the landowner to the district court and the jury appraised the property at the sum of $145,000. The railway company filed a motion to vacate the award and for a new trial, which was overruled. Thereupon the railway company gave notice that it elected to abandon the condemnation proceedings. This action was then brought in which, among other things, it was alleged that the railway company had no right to abandon the proceedings after the award was made by the jury, and asked judgment directing and compelling the railway company to pay the award made by the jury.

Another count was added to the petition to the effect that it was the belief of the plaintiff that the purpose of the railway company was to harrass and annoy the plaintiff by making repeated attempts to condemn with a subsequent abandonment if the price awarded

did not suit it. It was alleged that the course of the defendant had compelled the plaintiff to incur large expense in the protection of his property and property rights and asked for an alternative judgment that if the defendant did not comply and pay the condemnation award it should pay the sum of $10,000 as damages for the trouble and expense he had suffered in the attempt at condemnation. It appears that subsequent to the condemnation proceeding an action in mandamus was brought in this court to require the county treasurer to return the deposit of $50,414 made by the company under the appraisement made by the commissioners. In that action the steps taken in the condemnation proceeding were alleged, including the action of the railway company refusing to take the property at the price fixed by the jury. The county treasurer holding the deposit answered that he did not know whether or not he could legally pay the deposit to the railway company, that is, whether the railway company could abandon the condemnation. That action resulted in a judgment that the county treasurer should pay over to the railway company the deposit without delay, and under that judgment the deposit has been paid to the railway company. It may be said that the plaintiff, Todd, was not a party to that action. The question raised on the demurrer to the petition is, Can a railway commence condemnation proceedings and after an appeal is taken to the district court and tried out there to an award, and the overruling of a motion for a new trial, abandon the proceedings?

There is no contention here as to the right of the railway company to exercise the right of eminent domain or that the land involved here was not subject to appropriation for railway uses. No claim is made that the railway company may not abandon a condemnation proceeding in its early stages, but it is insisted that after it has proceeded to a trial by the court there can be no abandonment. It is well settled that the proceeding is not a civil action at law or a suit in equity, but is a special statutory proceeding for the purpose of ascertaining the compensation to be paid for the property proposed to be appropriated, to be carried out in accordance with the methods provided by the legislature for the condemnation. From the beginning it has been recognized that the proceeding is a special statutory one to be accomplished in a way prescribed in the condemnation act. When the proper preliminary steps are taken and the right to condemn is not questioned, the inquiry is

confined to the question, What compensation is to be allowed for the property proposed to be taken? The inquiry is not an ordinary lawsuit, nor is the result comparable to a judgment in a common-law action. It is an award and not a judgment enforceable by execution, and even upon appeal to the district court from an award of commissioners, the finding of the jury in the district court is no more than an award and has not the effect and finality of a judgment. It has been held in such a quasi-judicial proceeding a personal judgment against the party condemning cannot be rendered. (*St. L., L. & D. Rld. Co. v. Wilder,* 17 Kan. 239.) In that case it was said:

"The judgment does not pass title to the land nor to the right of way. It simply determines the amount which the railway shall pay to the owner or owners of the land, or to the county treasurer for their use, in order to secure the right of way. . . . After the judgment is rendered in a case of this kind, then the railroad company may take the land, or not, at its option. (*Blackshire v. The A. T. & S. F. Rld. Co.,* 13 Kan. 515.) But until it pays for the land it gets no title. And if it does not pay for the land within the time prescribed by law, it may be ejected from the premises, provided, of course, that it has taken possession thereof. (*St. Jo. & D. C. Rld. Co. v. Callender,* 13 Kan. 496.) An owner of land would not want to take a judgment against an irresponsible and insolvent railroad company as payment for his land; nor would a railroad company want to pay an enormously excessive award of damages for its right of way. Therefore it is right that each should have some choice in the matter." (p. 247.)

See, also, *W. & W. Rld. Co. v. Kuhn,* 38 Kan. 104, 16 Pac. 75; *K. C. W. & N. W. Rld. Co. v. Kennedy,* 49 Kan. 19, 30 Pac. 126.

In an appeal to the district court the question there is the same as was submitted to the commissioners, namely, What will be just compensation for the land in case it is condemned for public use? As stated in *St. L., L. & D. Rld. Co. v. Wilder,* supra, a condemnation is not completed nor the rights of the parties settled until the inchoate proceeding is completed and there is an actual taking of the land, and even after the proceeding is complete and the compensation fixed the railroad company may then take the land or not, at its option. In the later case of *Railway Co. v. Wilson,* 66 Kan. 233, 69 Pac. 342, the question was again before the court and it was held that in a condemnation proceeding like this, conducted to a completion, the railway company may abandon the condemnation where title to the easement has not actually passed. In the opinion the court approved and followed a statement in 2 Lewis on Eminent Domain, 3d ed., § 954, to the effect that the weight of authority is that in the absence of statutory provisions on the subject the pro-

ceeding is simply one to fix the price at which the condemning party can take the property, and that even after a judgment or confirmation of the finding, the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded. On the same point is a statement of like effect in 3 Elliott on Railroads, § 1033. After considering the pertinent provisions of our statutes on the question, it was said:

"Surely the law would not mean to give the landowner the company's money for land which it had not in fact taken, and on which it had not actually entered for the purpose of taking it, when the intention to take it, though once declared, had been expressly abandoned, merely because the legal formalities looking to the taking of it had been carried to a conclusion." (p. 240.)

This decision was in line with the earlier decisions of the court and practically a reaffirmation of the right of abandonment. This interpretation of the statute, although announced many years ago, has not been changed by an amendment of the statute, and no reason is seen for a modification of the rule so long applied to condemnation proceedings.

In plaintiff's second count of the petition he sets forth a claim for the expenses he had incurred in the proceeding. He alleges his belief that the railway company intends repeated attempts at condemnation until it can secure the land at its own price. It was not alleged that there had been repeated attempts or any other than this single proceeding, nor does he state any facts justifying his suspicion. No expense was incurred by him except those incident to his effort to obtain a higher price for his land. He and all other landowners hold their real estate subject to the sovereign right of eminent domain, and under the rule adopted in Kansas no damages of the kind claimed can be allowed. If the railroad company in the surveys made or in other preliminary steps taken caused damage to plaintiff's land he might recover for actual injury, but no such damages are alleged.

Under the well-settled ruling it must be held that the plaintiff failed to set forth a cause of action in his petition, and therefore the judgment of the district court is affirmed.