No. 40,335

In the Matter of the Condemnation of Land for Kansas Turnpike Project. ORA ETHEL MOORE, *Appellee* and *Cross-Appellant,* v. KANSAS TURNPIKE AUTHORITY, *Appellant* and *Cross-Appellee.*

(317 P. 2d 384)

Opinion on rehearing filed October 25, 1957, (For original opinion of affirmance see 181 Kan. 51, 310 P. 2d 199.)

*Robert M. Cowger,* of Topeka, and *Alex Hotchkiss,* of Lyndon, argued the cause and were on the briefs for the appellant and cross-appellee.

*Ward D. Martin,* of Topeka, argued the cause and *A. Harry Crane, Arthur L. Claussen,* and *Harvey D. Ashworth,* all of Topeka, were with him on the briefs for the appellee and cross-appellant.

*Robert M. Cowger,* of Topeka, and *Alex Hotchkiss,* of Lyndon, as *amicus curiae.*

*Robert M. Cowger,* of Topeka, and *Blake A. Williamson,* of Kansas City, as *amicus curiae.*

*Edward M. Boddington, J. O. Emerson, Edward M. Boddington, Jr., Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks, Leonard O. Thomas,* and *J. D. Lysaught,* all of Kansas City, as *amicus curiae.*

*Wendell L. Garlinghouse,* of Topeka, and *Harry T. Coffman,* of Lyndon, as *amicus curiae.*

The opinion of the court was delivered by

HALL, J.: This matter is before the court on rehearing. It was previously considered and is reported in 181 Kan. 51, 310 P. 2d 199.

Since this is a rehearing, it would serve no useful purpose to recite the extensive facts of the case. They are reported in the previous decision and reference is made thereto.

Suffice it is that this case is a condemnation appeal involving a

single 160 acre parcel of land. After appropriate appeals to the district court from the award of the appraisers a motion was filed by the Kansas Turnpike Authority to consolidate the various appeals for trial. The Turnpike moved to consolidate the cases as a matter of law under G. S. 1955 Supp., 26-102, and not as a matter of discretion of the court under G. S. 1949, 60-601 and G. S. 1949, 60-765.

The court overruled the motion and refused to consolidate the appeals for trial. In due course an appeal was taken in this court. The appellant Kansas Turnpike Authority specified as error the following question which was considered in the previous hearing of the case, to wit:

"The sole question involved is 'Does an appeal in the District Court from an appraisement in an eminent domain proceeding bring to the District Court in its entirety the question of the sufficiency of the award to be tried in a single action as to all of the parties?' "

After an exhaustive study of the authorities which were cited in the previous decision the court was of the opinion that the matter of consolidation of such cases for trial was governed by the legislative intent of G. S. 1955 Supp., 26-102. The statute provides as follows:

"If the petitioner or the owner or any lien holder of record of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions: . . ." (Emphasis ours.)

The court said at page 57 of the previous opinion:

"The use of the disjunctive in the foregoing statute indicates the legislative intent that each owner of an interest in property may have a separate trial for the value of his property."

The court further said at page 59:

"We cannot accept appellant's contention. In this jurisdiction the rule followed in consolidation of cases for trial is not one of substance but one of procedure (under the provisions of G. S. 1949, 60-601 and 60-765). . . .

"Motions for consolidation under the statutes are in the sound discretion of the trial court. (*Railway Co. v. Hart*, 7 Kan. App. 550, 51 Pac. 933; *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164; and *Todd v. Central Petroleum Co.*, 153 Kan. 550, 112 P. 2d 80.)

"In the absence of any showing of abuse of discretion in refusing to consolidate these appeals for trial, the judgment of the district court will be affirmed. No abuse of discretion is shown here."

In its previous opinion the court emphasized the disjunctive aspects of G. S. 1955 Supp., 26-102, and decided that it was the intent of the legislature to give the petitioner *or* the owner *or* any lien holder *or* any interested party the right to separate trial for the value of his interest in the land taken.

In arriving at this conclusion the court was not unmindful of *Federal Land Bank v. State Highway Comm.*, 150 Kan. 187, 92 P. 2d 72. The majority opinion cited and quoted from the case but distinguished it along with a persuasive line of authority on the basis of the disjunctive aspects of the statute.

After rehearing and further study the court is now of the opinion that its previous decision ought to be vacated and set aside for the following reasons:

Following our previous decision (*Moore v. Kansas Turnpike Authority*, 181 Kan. 51, 310 P. 2d 199, and other citations therein) eminent domain begins as a special statutory proceeding *in rem* under the Kansas statutes. See, also, *State v. Boicourt Hunting Ass'n*, 177 Kan. 637, 282 P. 2d 395; and *Walker v. City of Hutchinson*, 178 Kan. 263, 284 P. 2d 1073, 352 U. S. 112, 1 L. ed. 2d 178, 77 S. Ct. 200.

As a matter of substantive law under the provisions of G. S. 1949, 26-101, *et seq.*, as amended by G. S. 1955 Supp., 26-102, an appeal in an eminent domain proceeding from the award of the appraisers to the district court brings to that court a single action to be tried as such, without separating such action into as many separate actions as there are parties interested in the particular tract involved in the appeal, following *Federal Land Bank v. State Highway Comm.*, supra.

The salient facts of that case were that the State Highway Commission filed its petition to condemn certain lands for highway purposes. Notice was given the landowner as well as the bank, a lien holder, which held a mortgage on the tract involved.

The bank then filed an application alleging it held unsatisfied mortgage liens on the land and asked that an order be made to pay the award to the bank.

In due course, the appraisers made their report and the bank appealed from the award. Neither the landowner nor the State Highway Commission filed any notice of appeal from the appraisement made.

The State Highway Commission then filed its motion for an order determining the questions of law propounded. The first question

was whether the landowners were parties to the appeal; the second, if they were not parties, what was the measure of damages to which the bank was entitled.

The question as to the division of the award as between the landowner and the lien holder was not before the court.

The court, after reviewing the history of the condemnation statute, said:

". . . In 1937 the provision of the general condemnation act conferring right of appeal theretofore granted to the petitioner or landowner was amended by Laws 1937, ch. 226, §1, now appearing as G. S. 1937 Supp. 26-102, and now reads:

" 'If the petitioner or the owner or any lienholder of record of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions.'

"It will be observed that under that statute appeal is perfected, not by serving notice on any parties occupying what might be called an adverse position; it is perfected by notice filed with the clerk of the court. There is nothing in that statute which indicates or leads to the conclusion that as to a particular tract of ground the petitioner might appeal as to the lienholder and not the landowner, or vice versa, or that the lienholder could appeal separately as between the petitioner and the landowner, or that the landowner could appeal separately as between the petitioner and the lienholder. The statement is that if any one of the three appeal, an action shall be docketed and tried. The statute provides its own procedure up to the point where the appeal is perfected. When that has been accomplished 'an action shall be docketed and tried the same as other actions.' We are of opinion that under the statute there is and can be no separation as between parties. Whenever an appeal is taken, either by the petitioner or by the landowner or by a lienholder, the effect is to bring to the district court in its entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to this court. We think the ruling of the trial court on the first question of law propounded that the landowner was not a party to the appeal to the district court was erroneous, . . ." (pp. 189, 190.)

On the question as to the measure of damages, the court said:

"The appellant here has briefed the question as to the measure of damages to be applied as to a lienholder on the theory that he is owner of less than a fee and the measure should be restricted to his interest or right. We shall not discuss that question as presented. . . ."

After rehearing the court is in agreement with the Federal Land Bank case and is of the opinion that the disjunctive aspects of G. S. 1955 Supp., 26-102 are controlled by the following words of the statute, to wit:

". . . and thereupon *an action* shall be docketed and tried the same as other actions: . . ." (Emphasis ours.)

The Federal Land Bank case was decided in 1939. The legislature has not seen fit to change the statute in this respect and since it has been amended in many other ways we must assume that the decision of the Federal Land Bank case follows the legislative intent of the statute. Therefore, it is the law of this state that whenever an appeal is taken to the district court under this statute, either by the petitioner or the landowner or by a lien holder, from an appraisement made, the effect is to bring to the district court in its entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to the right of appeal to the supreme court.

In the original opinion of this court (*Moore v. Kansas Turnpike Authority*, 181 Kan. 51, 310 P. 2d 199) we pointed out that the authorities are sharply divided on the issue presented in this case. Generally speaking, state statutes and practices are controlling. As in the Federal Land Bank case, the various jurisdictions follow those authorities which most closely conform to the local statute and practice.

A leading case is *Kohl Et Al. v. United States*, 91 U. S. 367, 23 L. ed. 449:

"The second assignment of error is, that the Circuit Court refused the demand of the defendants below, now plaintiffs in error, for a separate trial of the value of their estate in the property. They were lessees of one of the parcels sought to be taken, an dthey demanded a separate trial of the value of their interest; but the court overruled their demand, and required that the jury should appraise the value of the lot or parcel, and that the lessees should in the same trial try the value of their leasehold estate therein. In directing the course of the trial, the court required the lessor and the lessees each separately to state the nature of their estates to he jury, the lessor to offer his testimony separately, and the lessees theirs, and then the government to answer the testimony of the lessor and the lessees; and the court instructed the jury to find and return separately the value of the estates of the lessor and the lessees. It is of this that the lessees complain. They contend, that whether the proceeding is to be treated as founded on the national right of eminent domain, or on that of the State, its consent having been given by the enactment of the State legislature of Feb. 15, 1873 (70 Ohio Laws, 36, sect. 1), it was required to conform to the practice and proceedings in the courts of the State in like cases. This requirement, it is said, was made by the act of Congress of June 1, 1872. 17 Stat. 522. But, admitting that the court was bound to conform to the practice and proceedings in the State courts in like cases, we do not perceive that any error was committed. Under the laws of Ohio, it was regular to institute a joint proceeding against all the owners of lots proposed to be

taken. (Giesy .v. C. W. & T. R. R. Co., 4 Ohio St. 308); but the eighth section of the State statute gave 'the owner or owners of each separate parcel' the right to a separate trial. In such a case, therefore, a separate trial is the mode of proceeding in the State courts. The statute treats all the owners of a parcel as one party, and gives to them collectively a trial separate from the trial of the issues between the government and the owners of other parcels. It hath this extent; no more. The court is not required to allow a separate trial to each owner of an estate or interest in each parcel, and no consideration of justice to those owners would be subserved by it. ` . . ." (p. 377.)

See, also, *Bogart v. United States,* 169 F. 2d 210; *Carlock v. United States,* 53 F. 2d 926; *City of St. Louis v. Rossi,* 333 Mo. 1092, 64 S. W. 2d 600; *Dye v. Railroad Co.,* 77 Kan. 488, 94 Pac. 785; *Federal Land Bank v. State Highway Comm.,* supra; *K. & C. P. Rly. Co. v. Phipps,* 4 Kan. App. 252, 45 Pac. 926; *Meadows v. United States,* 144 F. 2d 751; *Newton Trust Co. v. Commissioner of Internal Revenue,* 160 F. 2d 175; *Reiter v. State Highway Commission,* 177 Kan. 683, 281 P. 2d 1080; *State ex rel. McCaskill v. Hall,* 325 Mo. 165, 28 S. W. 2d 80, 69 A. L. R. 1256; 166 A. L. R. 1211; *State Highway Commission v. Weiss,* 167 Kan. 427, 207 P. 2d 480; 18 Am. Jur., Eminent Domain, § 316; *Sinclair v. Missouri Pac. Rld. Co.,* 136 Kan. 764, 766, 18 P. 2d 195; *Nelson v. City of Osawatomie,* 148 Kan. 118, 121, 79 P. 2d 857; *C. K. & W. Rld. Co. v. Sheldon,* 53 Kan. 169, 35 Pac. 1105; *United States v. 25,936 Acres of Land, Etc.,* 153 F. (2d) 277; *Grand River Dam Authority v. Gray,* 192 Okla. 547, 138 P. 2d 100; *Eagle Lake Improvement Co. v. United States,* 160 F. (2d) 182; Nichols Em. Dom. V. 6 § 24.1 [1], p. 4; 69 A. L. R. 1263; and 98 A. L. R. 260.

See, also, Restatement Of The Law, Property, § 53:

". . . The condemning party is generally privileged to join in a single proceeding all persons having estates or interests in the affected land. Correlatively, it is the general rule that all persons having interests in land which has been appropriated, or is about to be appropriated, are privileged to unite in a single proceeding to obtain compensation for the land taken. An occasional statute explicitly makes these privileges, also duties. Thus the procedure, in the absence of a specifically inconsistent statute, is to fix a lump sum value for the estate in fee simple absolute and then to take up the distribution of this sum among the persons having interests in the affected land." (pp. 186, 187.)

On the constitutional aspects, see particularly *State ex rel. McCaskill v. Hall,* 325 Mo. 165, 28 S. W. 2d 80, 69 A. L. R. 1256:

"Refusal to assess damages of the owner of a specific interest in property taken by eminent domain separately from those of other owners of interests in the property does not violate constitutional provisions against deprivation of

property without due process of law or taking private property for public use without just compensation, to be paid before the property is disturbed or the proprietary rights of the owner therein devested, although the owner of the specific interest may be compelled to bear the expense of litigation, with other interested persons, as to the apportionment of the award among themselves, and such litigation may continue until long after he has been dispossessed of the property."

The separate interest of the owner of a leasehold estate and the right to share in compensation when all or part of the property leased is taken by eminent domain is well settled and not disturbed by the decision here. (*Bales v. Railroad Co.*, 92 Kan. 771, 141 Pac. 1009; *State Highway Comm. v. Weiss*, supra; *State Highway Commission v. Safeway Stores*, 170 Kan. 413, 226 P. 2d 850; and *Miles v. City of Wichita*, 175 Kan. 723, 267 P. 2d 943.) But, the right to share in the award does not entitle such owner of a leasehold interest to a separate trial to determine compensation and damages for the separate interest appropriated.

For contrary holdings see *Boston Chamber of Commerce v. Boston*, 217 U. S. 189, 54 L. ed. 725, 30 S. Ct. 459; *United States v. Certain Parcels of Land*, 43 F. Supp. 687; *Duckett & Co. v. United States*, 266 U. S. 149, 69 L. ed. 216, 45 S. Ct. 38; 69 A. L. R. 1263; 29 C. J. S. Eminent Domain § 279; and *State v. Platte Valley Public Power and Irrigation District*, 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196.

The force of this decision means that the district courts of Kansas must not docket separately appeals from the award of appraisers by owners of separate estates or interests in a single parcel of land. Such appeals cannot be lawfully so severed and later consolidated for trial. To the contrary, an appeal of any owner or interest holder brings to the court in its entirety the sole question of the sufficiency of the award to be docketed and tried as a single action.

It is recognized that many of the district courts have been treating such appeals as a procedural matter; thus each appeal has been docketed separately with consolidation for later trial a matter of discretion by the court. Such is the case here. Under these facts and circumstances the right of consolidation of such appeals under G. S. 1955 Supp. 26-102 must be considered as a matter of substantive right and not one of procedure. Where such appeals are docketed separately a refusal to consolidate for trial is contrary to law.

It is important to emphasize that the rule of this case applies to eminent domain proceedings and to appeals in such proceedings by

the petitioner or owners of an estate or interest in a single parcel of land. The decision of this case has no application to, and in no way changes, the established rule that appeals from awards of appraisers by owners of an estate or interest in separate parcels of land may be docketed separately and may be consolidated for trial as shall be determined in the sound discretion of the court under the authority of G. S. 1949, 60-601 and 60-765.

The rehearing of this matter is limited to the issue of the consolidation of appeals in this case. The court did not grant a rehearing on the cross appeal of appellee in re the limiting of the appellee on certain cross-examination. As to that point the previous decision of this court in 181 Kan. 51 stands. All other portions of that decision are withdrawn and set aside.

The judgment of the district court of Osage County is reversed in part and the case remanded with directions to consolidate the separately docketed appeals and proceed with a new trial of all appeals as a single action to determine the sufficiency of the award.

PRICE, J., dissenting: A careful analysis of the opinion of the court on rehearing in this case, and of the dissenting opinion of Mr. Justice Schroeder, brings into clear focus the confusion resulting from an attempt to apply the statute (G. S. 1955 Supp. 26-102) to the many and varied factual situations often present in appeals from awards of appraisers in condemnation proceedings. To me, the statute, from a procedural standpoint, is ambiguous and needs legislative clarification, and, in my opinion, no prior decision of this court gives a complete answer to the question presented. As applied to the practical problems which confront trial courts in such cases, I think there is much to be said for each of the views expressed, but my over-all feeling in the matter simply amounts to this:

I have pronounced misgivings as to and a fear of the sweeping results and ramifications of the opinion of the court. In the absence of a clear and unambiguous mandate by the legislature or a prior decision of this court to the contrary, it is my opinion that the question of consolidation of appeals involving separate ownerships or interests in one parcel of land in turnpike condemnation proceedings should be left to the sound discretion of trial courts. In the instant case no abuse of judicial discretion was established and the judgment should therefore be affirmed.

I therefore respectfully dissent.

SCHROEDER, J., (dissenting): In my opinion, the decision in *Moore v. Kansas Turnpike Authority*, 181 Kan. 51, 310 P. 2d 199, was the correct decision on the facts and circumstances presented as to the point of law here involved.

This court on its own motion, May 15, 1957, granted a rehearing in the above entitled case, ". . . *limited to the question of consolidation of appeals from the award of the appraisers*." Attorneys of record in *Jenkins v. Kansas Turnpike Authority*, No. 40,587 (decided this date), were granted leave to file briefs *amicus curiae*, which they did.

An effort will be made in this dissent to emphasize the present need for adequate legislation concerning the law of eminent domain in Kansas. This court has now come to a fork in the road. One course leads eventually to an unconstitutional end in my opinion. Many decisions are binding upon this court as precedent which construe and apply legislation adopted in the horse and buggy days. An attempt will be made to plot the present course in which the law is headed. This is done in the hope that perhaps Kansas may emerge with a condemnation code of comparable quality to the Kansas probate code, which has been recognized as a model code in probate law and practice throughout the states. (For the 1953 Amendment in G. S. 1955 Supp., 26-102, see *Burke v. Board of Education of Common School District No. 110*, 181 Kan. 534, 313 P. 2d 272.)

With vast condemnations in the offing by reason of the Federal highway expansion program attention must be focused upon adequate legislation. The great number of Kansas Turnpike cases appealed to this court should serve as warning.

The perplexity and confusion in the Kansas law on eminent domain today must be attributed in part, at least, to the numerous distinct statutory procedures authorized by the legislature. The applicable statute in a given situation is determined by the authority seeking to exercise the power of eminent domain. Condemnation by a railway company is conducted pursuant to G. S. 1949, 66-901 to 911, incl.; the state highway commission and others must proceed under the general condemnation law, G. S. 1949, 26-101 and 102, as amended; condemnation by cities is conducted pursuant to G. S. 1949, 26-201 to 210, incl.; the Kansas Turnpike Authority was given special concessions to proceed under G. S. 1955 Supp., 68-2006, and except as there modified, is required to proceed under the

general condemnation law; and still another procedure is provided for the State to exercise its power of eminent domain for land of historical interest in 26-301 to 306, incl.

The development of the law under railway condemnation statutes on the point of law presently before this court is an example. In *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 4 Pac. 858, consolidation of appeals, one by the lessee and one by the landowner, was held error; in *C. K. & N. Rly. Co. v. Ellis*, 52 Kan. 41, 33 Pac. 478, the owner of a life interest was not required to join the owner of the legal title in remainder with him in his appeal; in *Wuester v. T. & N. Railroad Co.*, 85 Kan. 636, 118 Pac. 1054, it was held error not to instruct on trial of the landowner's appeal that his wife had a one-half interest in the title and she was not a party to the action; and in *Dye v. Railroad Co.*, 77 Kan. 488, 94 Pac. 785, it was held that only the owners who appealed were entitled to the amount of the jury's verdict and that the other owners were limited to the amount of the commissioners' award. These decisions are all contrary to the ruling in the instant case, and though persuasive, are not controlling, since the exercise of the power of eminent domain was pursuant to statutes other than the general condemnation statutes presently before the court.

The decision of this court upon rehearing in the instant case is based upon a construction of G. S. 1955 Supp., 26-102. The first sentence of this statute dating back to 1937 remains the same as it was prior to the amendment in 1953. Upon reconsideration the majority of the court concluded that the law set forth in the syllabus in *Federal Land Bank v. State Highway Comm.*, 150 Kan. 187, 92 P. 2d 72, decided in 1939, controls the decision of this court in the instant appeal. Syllabus 1 reads:

"Whenever, under Laws 1937, ch. 226, § 1 (G. S. 1937 Supp. 26-102), an appeal is taken to the district court, either by the petitioner or by the land-owner or by a lienholder from an appraisement made in proceedings in eminent domain had under G. S. 1935, 26-101, the effect is to bring to the district court in its entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to the supreme court."

Inasmuch as the *Federal Land Bank* decision, including the syllabus thereto, has been in the official reports since 1939 and the legislature has not seen fit to change the statute by reason of such interpretation, the court considers itself obligated to adhere to that decision which it regards as applicable to the instant case. The

first inquiry concerns the extent to which one may look to an opinion to determine what a case holds rather than accepting the law from the concise abstracted statement thereof as it appears in the syllabus. In my opinion, the syllabus must be fortified by the factual situation presented in the case. ( G. S. 1949, 20-203 and G. S. 1949, 60-3329. )

When one looks through to the factual situation presented in the *Federal Land Bank* case it is found that the question determined was not the issue presented in the instant case, but was the *measure of damages* to be applied when a lien holder appealed from an award in a condemnation proceeding in which no appeal was taken by the landowner or by the petitioner from the award. There land was condemned on which the Federal Land Bank had a mortgage lien. Prior to the report of the appraisers the bank applied for an order that the award be paid to it, alleging that it held an unsatisfied mortgage lien on the land sought to be condemned and that by virtue thereof it had a *first and prior lien in equity upon any award for damages granted to its mortgagor.* The trial court ruled that the landowner was not a party to the appeal. Under those facts this court concluded that the landowner was a party to the appeal and the *measure of damages* applied by the trial court—the reasonable market value of the land taken and the difference in the value of the remaining tract immediately before and immediately after the condemnation—was correct. It is very important, since it is conspicuous for its absence, that at no place in the opinion is any explanation given as to *how* the landowner got into *the action.* The landowner took no appeal. It has been held by this court that no action is pending in a condemnation matter until an appeal has been taken. Until that time it is not a judicial proceeding but is merely an inquisition. ( *State v. Boicourt Hunting Ass'n,* 177 Kan. 637, 282 P. 2d 395; and *State Highway Commission v. Griffin,* 132 Kan. 153, 294 Pac. 872. )

No provision is made in 26-102, *supra,* and no explanation is given by any decision of this court disclosing how an owner in a single tract or parcel of ground may be brought into an action where the only appeal is taken by a lien holder from a condemnation award. It was observed in the opinion of the *Federal Land Bank* case that under the statute appeal is perfected not by serving notice on any parties occupying what might be called an adverse position, but was perfected by notice filed with the clerk of the court. I am, therefore, of the opinion that Syllabus 1 of the *Federal Land Bank* case is not based upon facts presented by the case but upon dictum.

Even assuming that Syllabus 1 is the law based upon *the facts* in the *Federal Land Bank* case, it is not controlling as a precedent in the instant case. The court there was presented with the precise wording of the statute in the singular on facts where the court was dealing with singular parties as specified in the statute. The court there was not confronted with a situation of plural owners, such as we have in the instant case. Thus, it is reasonable to conclude that the rule would apply only where the parties in a condemnation action involve a lien holder as a third party interested in the condemnation. This is understandable for there is *unity of interest* between an owner of land who mortgages it, and the mortgagee, lien holder, who has an interest in the land as security for the debt owed him by the mortgagor. In the instant case rights of mortgagees or lien holders are not involved. The rights and claims of owners of leasehold estates, life estates and remainders in real property are quite different. Such interests are not joint but *several* and the interest of one might be termed adverse to the interest of any other owner in a single tract of land. The distinction has been recognized by this court in *State Highway Commission v. Weiss,* 167 Kan. 427, 207 P. 2d 480; *State Highway Commission v. Safeway Stores,* 170 Kan. 413, 226 P. 2d 850, (One), set aside on rehearing for other reasons in 170 Kan. 545, 228 P. 2d 208, (Two); *Miles v. City of Wichita,* 175 Kan. 723, 267 P. 2d 943; and *Bales v. Railroad Co.,* 92 Kan. 771, 141 Pac. 1009.

In *Safeway Stores* case (One), decided in 1951, long after the *Federal Land Bank* case, this court at page 416 said:

". . . It is apparent a tenant is not a lienholder within the ordinary meaning of that term . . ."

The court in that case, decided under the provisions of G. S. 1949, 26-101 and 102, said in Syllabus 1:

"A tenant for years under a written lease is an 'owner' of property within the meaning of that term as used in our condemnation statutes and is entitled to compensation if his leasehold estate is damaged by the exercise of eminent domain."

Further quoting the pertinent part in Syllabus 3:

". . . The landowner accepted the award of the appraisers deposited with the clerk of the district court by the condemnor pursuant to a stipulation of the parties, approved by the court, that payment of the award to the landowner would in nowise affect the question of the condemnor's right of appeal

from a separate award to the lessee who operated a grocery store on a part of the premises facing the highway; . . ."

(See, also, *Comm'rs of Smith Co. v. Labore,* 37 Kan. 480, 15 Pac. 577.)

Let us consider now the construction of 26-102, *supra,* the first sentence of which has remained on the statute books without change since 1937 when the words "or any lien holder of record" were added after the word "owner" in the first line thereof. Grammatically speaking, the first sentence is worded in the singular throughout. The court in its majority opinion must construe the word "owner" in the statute in the plural, applying the provisions of G. S. 1949, 77-201, since the party owning the fee title is an owner, and, as we have seen, a lessee is an owner within the meaning of the statute. Yet the court stops short of following through by applying the same rule of construction to the rest of the sentence so that it reads grammatically in the plural. While the term "owner" is construed in the plural, "an action" is construed in the singular.

This court has heretofore construed "an action" to mean more than one action in *Douglass v. Leavenworth County,* 75 Kan. 6, 88 Pac. 557. In that case the statute under which the proceedings were taken was Ch. 392 of the Laws of 1901 (similar to G. S. 1949, 79-2801, in its present form).

The specifications of error assigned by the Turnpike in the instant case resolve into what appears on the surface a rather simple question. It is stated by the Turnpike as follows:

"The sole question involved is 'Does an appeal to the District Court from an appraisement in an eminent domain proceeding bring to the District Court in its entirety the question of the sufficiency of the award to be tried in a single action as to all of the parties?'"

The answer to that question in the affirmative, which is the answer given by the court on rehearing, immediately poses the jurisdictional aspect of the decision. If an appeal by any one of several parties owning an interest in a single tract of land brings to the district court in its entirety the question of the sufficiency of the award to be tried in a single action as to all of the parties, then each and every party owning an interest in that single tract of land is an indispensable party to the action. This court has held that the failure of an indispensable party is jurisdictional and renders a judgment by reason thereof absolutely void. (*McFadden v. Mc-*

*Fadden,* 179 Kan. 455, 296 P. 2d 1098; *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.,* 172 Kan. 305, 239 P. 2d 927; and *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.,* 168 Kan. 259, 212 P. 2d 348.) Thus, where there have been multiple owners in a single tract of land, the judgments in each of the many cases, heretofore determined by final judgment in the Kansas courts under the general condemnation statutes, are void where for any reason, by settlement or otherwise, there was a failure of one of the parties owning an interest. (For example, see facts in *Jenkins v. Kansas Turnpike Authority,* supra; also *State Highway Commission v. Safeway Stores,* [One] and [Two], *supra, contra.*)

At no time has the jurisdictional aspect of the case been presented to this court, and never has the court upon its own motion raised the question. The majority opinion makes no mention of it.

At this crucial point in the development of the law of eminent domain counsel for the Turnpike would have this court apply with full vigor an *in rem* theory in condemnation cases not only as to the initial proceedings which are in the nature of an inquest, but also as to the appeal from an award which initiates an action in court.

It must be recognized that many Kansas cases refer to the award as being substituted for the land taken, or words of like import. In modified form the proposition is stated in the dissenting opinion of *Moore v. Kansas Turnpike Authority,* supra, at page 65 as follows:

"Separate interests in the land acquired are transferred to the single award, which is substituted for the property taken, and the value of the parts cannot exceed the value of the whole. A condemner ought not be required to pay more for separate interests than the land acquired would be worth if owned by one person. The value of each interest is ascertained by determining the value of the land as a whole, which may be apportioned among the several owners as their respective interests may appear and as the district court in the exercise of its equitable power and jurisdiction may deem proper. . . ."

On the surface this court is confronted only with the construction of G. S. 1955 Supp., 26-102. Beyond this the question resolves into the measure of damages to be applied in a condemnation action. It is apparent from arguments advanced by counsel for the Turnpike that the primary objective of this action is not the "single action rule" but the measure of damages to be applied. Herein lies the importance of this decision. Kansas cases which speak of the award as being substituted for the land taken are heralded by the Turnpike as an adoption of the *in rem* theory in condemnation actions. Actual cases cited, however, to support the foregoing proposition advanced

as a rule for the measure of damages, speak of proceedings to exercise the right of eminent domain as proceedings *in rem*. (*Walker v. City of Hutchinson*, 178 Kan. 263, 284 P. 2d 1073, 352 U. S. 112, 77 S. Ct. 200, 1 L. Ed. 2d 178; *K. & C. P. Rly. Co. v. Phipps*, 4 Kan. App. 252, 45 Pac. 926; and *Todd v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 459, 7 P. 2d 79.) Note that two of these cases are under railway condemnation statutes which have already been construed contrary to the Turnpike's contention relative to the "single action rule."

A careful reading of the Kansas cases which mention *in rem* proceedings in condemnation matters discloses that they are speaking of the special statutory proceedings prior to an appeal from the award.

The fallacy of the *in rem* argument lies in the failure to distinguish, as the Kansas cases clearly do, the difference between the special statutory procedure for condemning the property (labeled an inquisition in the *Boicourt* case) and the nature of the appeal from the appraisers' award. Title to the property and right to possession passes to the condemning authority by the special statutory procedure (G. S. 1955 Supp., 68-2006, provides ". . . That title to any property condemned by the [Turnpike] authority shall immediately vest in the authority . . .") and this cannot be contested on appeal by the landowner, lessee or lien holder. (*State v. Boicourt Hunting Ass'n*, supra; *Glover v. State Highway Comm.*, 147 Kan. 279, 77 P. 2d 189; *Russell v. State Highway Comm.*, 146 Kan. 634, 73 P. 2d 29; and *State Highway Commission v. Griffin*, supra.)

In fact, once the owner of land takes an appeal from an award in a special statutory condemnation proceeding which might otherwise be invalid, he has given the condemnation proceeding the breath of life. Thus, it is abundantly clear that the land condemned is completely beyond the court. The court itself never assumed the possession of or dominion over the property at any stage. In the case of *Alabama Power Co. v. Gulf Power Co.*, 283 Fed. 606, at page 609, the Federal District Court in Montgomery, Alabama, said:

"The rule is well settled in so far as actions in personam are concerned. While a proceeding by way of condemnation is often spoken of as a proceeding in rem, in truth it is not, strictly speaking, such a proceeding, since the court itself never assumes possession of or dominion over the property, the land, at any stage. This is illustrated by the Act of Congress of July 2, 1917, amending the condemnation laws of the United States. 40 Stat. 241, c. 35

(Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6911a). It was discovered during the war that the United States could not get possession of land necessary for camp sites for its soldiers until at the end of the condemnation proceedings. Congress therefore amended the law, so as to authorize the government to take possession immediately upon the institution of the proceedings. This act, however, was limited to the period of war."

In *Stewart v. Marland Pipe Line Co.*, 132 Kan. 725, 731, 297 Pac. 708, decided in 1931, where proceedings to exercise the right of eminent domain were conducted pursuant to the general condemnation statutes, this court held that the landowner was entitled to a *personal judgment* against the condemning body in an appeal taken pursuant to the statute which declared the appeal to be an action. The court there said:

". . . The result of an action must be a judgment. This was an action—hence must result in a judgment."

It is elementary of legal principles that no personal judgment can be entered in an *in rem* action. It can hardly be argued that the amount of the appraisers' award when deposited becomes the *res* of an *in rem* action. By definition, an *in rem* action is one which determines the title or right to possession of a specific *res*. Obviously, if the award were the *res* of an *in rem* action, it could neither be enlarged nor diminished on appeal because the *res* could not be altered by litigation, only the title or right to possession could be altered.

To circumvent the force of two leading cases against the Turnpike cited by the appellee, the Turnpike calls attention to the fact that the issue in the cases of *Boston Chamber of Commerce v. Boston*, 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725; and *State v. Platte Valley Public Power and Irrigation Dist.*, 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196, was not the issue before the court in the instant appeal, *i. e.*, separate trials, but a question as to the measure of damages to be applied. To avoid application of the rule of damages there pronounced as controlling under the federal constitutional safeguards the Turnpike advances its *in rem* argument.

A basic conflict, though somewhat concealed, confronting the court in the present case is the rule concerning the measure of damages in condemnation cases. It is frequently stated that the owner of lands appropriated for public use is entitled to full compensation, which is measured by the fair market value of the land actually taken, plus the difference, if any, in the fair market value

of the remaining tract immediately before and immediately after the appropriation. (*Federal Land Bank v. State Highway Comm.*, supra.)

The argument may be advanced that this court is bound to this rule by reason of precedent under the doctrine of *stare decisis*, and yet the fallacy of the rule as a universal measure of damages in condemnation actions was demonstrated by the drastic departure made by this court in *Miles v. City of Wichita*, supra, where under city condemnation procedure the City of Wichita appealed from the judgment of the lower court in favor of the lessee and it was held that the measure of damages for recovery by the lessee, recognizing the separate property right of the lessee, was the actual market value of the lease in the hands of the lessee. (See, also, *State Highway Commission v. Weiss*, supra; *State Highway Commission v. Safeway Stores*, [One], supra; *Bales v. Railroad Co.*, supra; *Duckett & Co. v. United States*, 266 U. S. 149, 45 S. Ct. 38, 69 L. Ed. 216; and 18 Am. Jur., Eminent Domain, § 296, p. 938.)

The property rights of citizens are protected in the exercise of the power of eminent domain by the Federal Government in the fifth amendment to the Federal Constitution. Similar protection is given to the citizens by the exercise of State power under the fourteenth amendment to the Federal Constitution.

The pertinent portion of the fifth amendment provides that *no person* shall ". . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation."

Justice Holmes, one of the leading jurists of his time, speaking for the Supreme Court of the United States uttered pearls of wisdom touching this vital question of eminent domain and the individual rights of citizens relative to their protection in the exercise of State power under the fourteenth amendment to the Federal Constitution in *Boston Chamber of Commerce v. Boston*, supra, affirming 195 Mass. 388, 81 N. E. 244. He said:

". . . But the Constitution does not require a disregard of the mode of ownership—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. *It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land.* And the question is what has the owner lost, not what has the taker gained. We regard it as entirely plain that the petitioners were not entitled as matter of law to have the damages estimated as if the land was the sole property of one owner, . . ." (p. 195) (Emphasis added.)

The pertinent portion of the fourteenth amendment provides ". . . nor shall any State deprive any person of . . . property without due process of law; . . ."

The Supreme Court of Nebraska has written a noteworthy opinion concerning the measure of damages which touch upon the constitutional safeguard of individual citizens in the exercise of the State's power of eminent domain. In *State v. Platte Valley Public Power and Irrigation Dist.*, supra, the court said:

> "The rule requiring just compensation to each owner for that which is taken must be applied in all instances under our Constitution. '. . . any rule that may be laid down must itself be measured by the rule given in the Constitution, and any rule that so limits the damages in such case as that the result will be in fact less than just compensation for the injury suffered, falls short of the constitutional measure.' *City of St. Louis v. Brown*, 155 Mo. 545, 56 S. W. 298. It seems to us also that those courts which have undertaken to limit the total award to the value of the unencumbered whole have overlooked the factual situation that exists in many of these cases where there is a personal property right taken or damaged, in addition to the real property taken or damaged. Obviously, the value of the real property should not be the limit of the recovery in such cases." (p. 308)

See, also, *Baltimore City v. Latrobe*, 101 Md. 621, 61 A. 203, 4 A. & E. Ann. Cas. 1005.

The direction in which this court apparently is headed may best be illustrated by a hypothetical set of facts. The assumption of these facts, it is true, may be criticized by legal scholars but it is felt necessary to properly analyze the correctness of the present decision. It is further felt that resort to a hypothetical set of facts may be made with propriety to avoid the situation expressed by Justice Frankfurter in *Teamsters Local 695 v. Vogt, Inc.*, 354 U. S. 284, 77 S. Ct. 1166, 1 L. Ed. 2d 1347, decided June 17, 1957, by the Supreme Court of the United States, concerning the due process clause:

> "It is inherent in the concept embodied in the Due Process Clause that its scope be determined by a 'gradual process of judicial inclusion and exclusion,' *Davidson v. New Orleans*, 96 U. S. 97, 104. Inevitably, therefore, the doctrine of a particular case 'is not allowed to end with its enunciation and . . . an expression in an opinion yields later to the impact of facts unforeseen.' *Jaybird Mining Co. v. Weir*, 271 U. S. 609, 619. . . ."

The decision in the *Jenkins* case is controlled by the decision of the majority herein and, while the actual facts of the *Jenkins* case are not before this court, the record presents sufficient material to foresee a hypothetical set of facts as follows:

A owns Blackacre which is an 85-acre tract of land situated in the immediate vicinity of a large metropolitan center, Kansas City. Blackacre is covered with palatable pasture grasses and has a house and other farm improvements. It also has large deposits of rock suitable for quarrying and making into road materials. The soil of Blackacre consists of clay suitable for making an aggregate used in the manufacture of lightweight building blocks.

Portions of Blackacre were leased by A to five different lessees as follows: B has a 25-year royalty lease to mine clay from a rather extensive portion of Blackacre; C and D have independent 10-year leases on respective portions of Blackacre to quarry and remove rock; E has an annual agricultural lease on the cultivated portion of Blackacre, subject to the lease of B, and on the buildings; and F is a trader in the Kansas City Stockyards and has a 5-year lease to the pasture grass on Blackacre subject to the leases of B, C and D.

As a result of B's royalty lease, it constructed a plant on its own property immediately adjacent to Blackacre for the manufacture of lightweight building blocks at a cost in excess of one million dollars. The Kansas Turnpike Authority condemned a strip of land on one side of Blackacre which completely severed B's plant with its non-access right of way from the remaining portion of Blackacre upon which it had a royalty lease, took in the portions of Blackacre upon which C and D had quarrying leases, took the buildings leased by E and cut off the ready access of E and F to Blackacre. B in the operation of its plant could not remove and supply clay to its plant after condemnation, except at greatly increased cost by reason of the severance of its plant from the source of materials. The circuitous route to which B must resort for its materials together with increased investment costs in getting the clay to the plant made the value of the plant questionable.

The foregoing hypothetical case immediately suggests many problems to be encountered under the "single action rule." If the measure of damages urged by the Turnpike under its *in rem* theory is applied, it is apparent that the Turnpike will be permitted to pit the adverse interests of six parties against each other to its advantage in a single trial urging all the while that all the Turnpike is getting is just a strip of land, hoping thereby to get its right of way for far less than if the actions were tried separately. The trial may take many weeks and place an intolerable burden upon owners of less valuable interests in the property. The expenses of the trial to them

may be much greater than the value of their interest. A lessee in such case could not afford to litigate, could not settle unless the others settled with the condemning authority and he could not be paid the amount of the appraisers' award. Such rule leaves the lessee of a less valuable interest a right, but as a practical matter he is without a remedy.

The full impact of the "single action rule" is not encountered until the arguments advanced by the Turnpike are analyzed. The Turnpike argues that it will have to pay more for the land condemned if tried in separate actions. The inference in the argument is that if all interests are tried in a single action, the Turnpike will pay less. These arguments wash each other out. Regardless of which way the trial is conducted the jury must be "properly" instructed and whether the trial is a single action for all parties or several actions tried separately, one for each party appealing who owns an interest in a single tract of land, the result theoretically should be no different insofar as instructions to the jury are concerned.

If B, the manufacturer of building materials given in the hypothetical case were to sell his plant and royalty lease to a prospective purchaser, the value of his plant and lease would be determined most likely from the history of the business on the basis of profits. In other words, the books would be laid open to the prospective purchaser and the value of the business as a whole, including plant and lease, would be determined by the profits of the business as they appear from the books and the condition of the plant and equipment.

The value of the royalty lease to A, the owner of the fee title in the hypothetical case, would be determined by the extent of the royalty payments received for materials mined from the land. This may be actually only ten per cent of the value of the lease to the manufacturer, B, yet the Turnpike under its "single action rule" and arguments as presented in the brief would insist that a jury determine the value of the property taken in terms of what the land was worth to the owner of the fee title as an unencumbered whole. Is the owner of the royalty lease to then share his fractional interest in the whole determined on this basis? Clearly, this is an invasion of the constitutional right guaranteed to the owner of property under the Constitution of the United States.

Another element of damage to B, the owner of the plant in the

hypothetical case, must not be ignored. While it may be contended that B should be denied recovery for purely consequential damages to the plant, there is a respectable line of authorities permitting recovery under the word "taken" in the statute where the damages are special and peculiar to the owner of property. These damages are not within the consequential damage rule. ( *C. B. U. P. Rld. Co. v. Andrews,* 41 Kan. 370, 21 Pac. 276; *Prickett v. Belvue Drainage District,* 159 Kan. 136, 152 P. 2d 870; *Sester v. Belvue Drainage District,* 159 Kan. 143, 152 P. 2d 875 [after trial, 162 Kan. 1, 173 P. 2d 619]; 109 Am. St. Rep., p. 909; and 29 C. J. S., Eminent Domain, § 110, p. 917.)

In the hypothetical case we have an owner of a leasehold estate who has additional property not physically taken by condemnation but specially and peculiarly affected by the condemnation. Not only this, but the property (the plant) owned by B is coupled with an interest (the royalty lease) to the property condemned. How is an appeal touching the damage to B's lease and plant to be tried under the "single action rule" if the measure of damages is determined by what the land was worth to the owner of the fee title as an unencumbered whole?

When the legislature said the appeal should be docketed and tried the same as other actions, it had reference to trial under the Code of Civil Procedure. Many decisions of this court under the Code of Civil Procedure emphasize that a cause of action must affect all of the parties for there to be a proper joinder. Where plaintiffs have similar claims against a single defendant but have entirely separate and different ownerships, they may not join in one action. ( *State, ex rel., v. Comm'rs of Reno Co.,* 38 Kan. 317, 16 Pac. 337; *L. N. & S. Rly. Co. v. Wilkins,* 45 Kan. 674, 26 Pac. 16; *Harrod v. Farrar,* 68 Kan. 153, 74 Pac. 624.) This is emphasized in *Crisler v. C. K. Packing Co.,* 181 Kan. 118, 309 P. 2d 703, where forty-five plaintiffs joined in an action to recover ten cents per hour for certain labor time under a contract negotiated by collective bargaining with the defendant. The court held on demurrer the causes of action were improperly joined on the ground that the contract in question vested a separate cause of action in each plaintiff, *since no plaintiff was interested in the relief sought by any other* within the meaning of G. S. 1949, 60-601.

While legal technicalities may be advanced to distinguish these cases it must be noted that under the railway condemnation

statutes, as heretofore shown, the law relative to joinder has grown in the same direction on the precise point before this court.

Thus, it is respectfully submitted that in all cases arising under the general condemnation law in which there exist multiple owners to a single tract of land, the various appeals should be docketed as separate actions for two reasons: First, this is the proper construction of G. S. 1955 Supp., 26-102, and second, the interests of the various owners are of such nature, in many cases, that they could not be joined.

In conclusion, it is felt that the original opinion of this court should stand. The granting of a rehearing does not in any wise impugn the inherent cogency of the logic of that opinion.